Timothy **SHULTZ**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee–Appellee.

No. 25A03–0003–CR–106.

Court of Appeals of Indiana.

Jan. 11, 2001.

Rehearing Denied March 22, 2001.

Joe Keith Lewis, Marion, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge

Timothy Shultz was convicted after a bench trial of three counts of receiving stolen property. He raises four issues, which we restate as the following two dispositive issues:

I. Whether the warrantless entry and search of Shultz's property violates the Fourth Amendment or Article I, Section 11 of the Indiana Constitution; and

II. Whether Shultz's conviction(s) are supported by sufficient evidence.

We affirm in part and reverse in part.

### Facts and Procedural History

In the course of investigating the theft of a semi-tractor, police suspicion began to focus on Timothy Shultz, who had test-driven the vehicle a few days before it was stolen. In November of 1997, officers went to Shultz's residence where they saw a white semi-tractor, which resembled the one that had been stolen, sitting in or near the driveway, beside a chicken coop. Although the semi-tractor "appeared" at first glance to be the one that had been stolen, the officers endeavored to confirm this by looking for a partial vehicle identification number (VIN) in the wheel-well. One officer used his flashlight to look inside the wheel-well and cleaned off dirt or grime covering the partial VIN with his glove. Finding a match of the last six numbers, the officers proceeded to the house, where they knocked on the back door but no one answered.

The entry area to the back door was also an open carport that housed two vehicles. One of these vehicles was a gold GMC Jimmy, which did not have a license plate and had a sticker placed on the dashboard to conceal the VIN. After no one answered the back door, the officers then toured the property to look for the owner, but never called out loud to ask if anyone was there. As they toured the property, to the west of the house the officers saw numerous vehicle parts and equipment, which led them to believe the property was being used as a "chop shop." R. at 170–71. They also walked into outbuildings where they observed a Ditch Witch in a shed without a door.

After all of these observations, the officers sought a search warrant for Shultz's house, carport, chicken coop, and machinery shed to search for the semi-tractor and for "any other evidence of stolen vehicles located upon the premises." R. at 133. The affidavit for the warrant recited the entire VIN of the semi-tractor and noted that the VIN on the Jimmy appeared to be concealed with tape or a tag. Upon execution of the warrant, officers seized several vehicles, trailers, and other items.

Shultz was charged with five counts of receiving stolen property and six counts of receiving stolen auto parts. He filed a pretrial motion to suppress, which was denied. Shultz later waived his right to a jury trial, and the State dismissed eight of the eleven counts. Shultz was convicted of

the remaining three counts: Count IV (gold GMC Jimmy), Count V (white IHC semi-tractor), and Count IX (orange Ditch Witch trencher). He was sentenced to an aggregate term of eight years with two years suspended and now appeals.

## I. Search of the Property

Shultz contends that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant. He argues that the entry upon his property, the search of his property, and the search of the semi-tractor for the VIN violate the Fourth Amendment and Article I, Section 11 of the Indiana Constitution. The State responds that neither the viewing of his property nor the viewing of the VIN constitutes a cognizable "search," and thus there was no constitutional violation.

### A. Fourth Amendment

■ As a preliminary matter, we agree with the State that the police officers did not violate the Fourth Amendment by their initial entry on Shultz's property. The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (Harlan, J., concurring)). "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Id.* at 178, 104 S.Ct. 1735. "Thus, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment." 1 Wayne R. LaFave, *Search and Seizure* § 2.3(f), at 506–08 (3d ed.1996) (footnotes omitted). The observation of the semi-tractor parked in or near a driveway does not violate the Fourth Amendment.

■ Similarly, the officer's use of a flashlight to search for a VIN does not violate the Fourth Amendment. *See United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) ("[T]he officers' use of the beam of a flashlight ... did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment."); *Rook v. State*, 679 N.E.2d 997, 1000 (Ind.Ct.App. 1997) ("[T]he use of visual aids and other sense-enhancing techniques do not change a law enforcement officer's observations into a search.").

■ Had the officer ended his search and obtained a warrant at that point, our opinion would conclude here with an affirmance in all respects. Instead, the officer used a glove to wipe dirt or grime off the wheel-well to reveal the partial VIN. The officers then proceeded to the back door of the house, where they knocked but no one answered, and then to the outbuildings allegedly to look for an owner but without ever calling out loud to ask if anyone was there. As explained below, wiping off the VIN and the subsequent search of the property raises serious concerns under the Fourth Amendment and is fatal to two convictions under Article I, Section 11 of the Indiana Constitution.

In *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), police entered an apartment from which a bullet had been fired to search for the shooter, victims, and weapons. They seized three weapons and then noticed some expensive stereo components, "which seemed out of place in the squalid and otherwise ill-appointed four-room apartment." *Id.* at 323, 107 S.Ct. 1149. Suspecting that the components had been stolen, an officer moved them to view and recorded the serial number underneath. The officer then reported the serial number to headquarters, which advised him that the turntable had been

taken in an armed robbery. The officer immediately seized the turntable. *Id.*

In *Hicks*, the State asserted that the officer's actions were neither a "search" nor "seizure" under the Fourth Amendment. The Court agreed that the recording of serial numbers was not a seizure because it did not "meaningfully interfere" with the defendant's interest in either the serial numbers or the stereo components. *Id.* at 324, 107 S.Ct. 1149. However, the Court found that moving the turntable did constitute a search.

> Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest. But taking action, unrelated to the objective of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry.... A search is a search, even if it happens to disclose nothing but the bottom of a turntable.

*Id.* at 325, 107 S.Ct. 1149.

Applying *Hicks* to the facts of Shultz's case, we reach the same conclusion. The VIN was concealed under dirt or grime within the wheel-well of the semi-tractor. Wiping the mud or grime from the wheel-well, similar to moving the turntable in *Hicks*, exposed something previously hidden to police. To paraphrase *Hicks*, a search is a search, even if it reveals nothing more than a partial VIN.

■ Nevertheless, the illegal search for the VIN is of no consequence under Fourth Amendment jurisprudence alone. The inevitable discovery exception to the exclusionary rule "permits the introduction of evidence that eventually would have been located had there been no error, for that instance 'there is no nexus sufficient to provide a taint.'" *Banks v. State*, 681 N.E.2d 235, 239 (Ind.Ct.App.1997) (quoting

*Nix v. Williams*, 467 U.S. 431, 438, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). Here, the illegally obtained VIN was not the sole ground relied upon in the probable cause affidavit for the search warrant. Police could have secured a warrant without the partial VIN, and the partial VIN and all the remaining evidence would have been inevitably and lawfully discovered in the execution of the search warrant. Accordingly, the trial court's denial of the motion to suppress was proper under the U.S. Constitution. *See Nix*, 467 U.S. at 438, 104 S.Ct. 2501.

B. *Article I, Section 11 of the Indiana Constitution*

■ Shultz also challenges the search of his property under the Indiana Constitution. Article I, Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"The purpose of Article One, Section Eleven is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995). Both trial and appellate courts consider "each case on its own facts to decide whether the police behavior was reasonable." *Id.* Under the Indiana Constitution, we find the police officers' conduct, at least in part, to have been unreasonable.

■ The initial viewing of the semi-tractor parked in or near the driveway was reasonable, as was the use of the flashlight. However, the officer's wiping off of the VIN was not reasonable. In *Peterson v. State*, 674 N.E.2d 528, 535 (Ind.1996), our supreme court held that a search "implies prying into hidden places for that which is concealed." *Id.* (citations omitted). Because the VIN was concealed, the

police action in revealing it was unreasonable under Article I, Section 11.

■ Nevertheless, we believe it was reasonable for police to go to Shultz's door to see if anyone was home in order to advise the owner of their visit. In open view from the vantage point of the back door, police observed the gold Jimmy with a concealed VIN. They did no prying into a hidden place or anything else to transform this open view into a search.

Finally, when no one answered the door, police toured the property and, in so doing, observed vehicle parts and equipment that led them to believe they had come upon a "chop shop." They also looked into outbuildings, one of which housed the Ditch Witch charged in Count IX. We hold that this additional search of the property, after determining that no one was home, was unreasonable.

■ Article I, Section 11 mandates that "the evidence found as a result of [an unconstitutional] search be suppressed." *Brown,* 653 N.E.2d at 80; *see also Callender v. State,* 193 Ind. 91, 96, 138 N.E. 817, 818 (1923) ("If the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant and its admission over his objection was prejudicial error."). As explained above, the search of the semi-tractor and for the Ditch Witch violated the Indiana Constitution.[1] Accordingly, we reverse Counts V (the semi-tractor) and IX (the Ditch Witch).[2]

## II. Sufficiency of the Evidence

■ As a final point, we must address Shultz's contention that his conviction for

receiving the stolen Jimmy (Count IV) is not supported by sufficient evidence.

■ In reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Perry v. State,* 638 N.E.2d 1236, 1242 (Ind. 1994). We consider only the evidence that supports the verdict and the reasonable inferences drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998).

■ According to statute, "[a] person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony." Ind.Code § 35–43–4–2 (1998). In order to sustain a conviction for receiving stolen property, the State must prove that the defendant knew the property was stolen. *Stone v. State,* 555 N.E.2d 475, 476 (Ind.1990). Knowledge that property is stolen may be inferred from the circumstances surrounding the possession, and attempts to conceal evidence may be considered by the factfinder as revealing consciousness of guilt. *Id.* "Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition has been held sufficient to support a conviction for Receiving Stolen Property." *Gibson v. State,* 643 N.E.2d 885, 888 (Ind.1994).

Larry Smith, a salesman at Mike Anderson Pontiac Olds GMC testified that Shultz test-drove the gold-colored Jimmy

1. The inevitable discovery exception has not been adopted as a matter of Indiana constitutional law, and the State does not advance any support for such an exception in this appeal. Until the inevitable discovery exception is adopted, we must proceed on an item-by-item basis to determine what items must be suppressed as the result of an illegal search.

2. Shultz also contends that Count IX must be reversed because it was based upon the erroneous admission of evidence under the business record exception. *See* Ind. Evidence Rule 803(6). However, because we reverse the conviction under the Indiana Constitution, we need not address this argument.

at issue on March 5, 1997. The vehicle was stolen a few days later. Some months later, police discovered the vehicle in Shultz's garage with a sticker concealing the VIN. We believe the circumstances surrounding the disappearance of the vehicle and its discovery in Shultz's garage together with the concealment of its VIN combine to form probative evidence from which a reasonable inference of guilt can be drawn. Accordingly, there is sufficient evidence to support the conviction.

### Conclusion

The conviction and sentence under Count IV is affirmed, and the convictions and sentences under Counts V and IX are reversed.

Affirmed in part and reversed in part.

MATTINGLY and ROBB, JJ., concur.