**Fermon L. AMMONS, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0109–CR–398.

Court of Appeals of Indiana.

June 28, 2002.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Fermon Ammons ("Ammons") was charged by Information with possession of cocaine, a Class C felony,[1] possession of cocaine and a firearm, a Class C felony,[2] and carrying a handgun without a license, a class A misdemeanor.[3] Ammons brings this interlocutory appeal following the trial court's denial of his motion to suppress the evidence. We affirm in part and reverse in part.

### Issue

Ammons raises two issues on appeal, which we consolidate and restate as follows:

Whether the trial court erroneously denied Ammons' motion to suppress.

### Facts and Procedural History

On April 11, 2001, around 4:30 a.m., Indianapolis Police Department officer Ryan Clark ("Officer Clark") initiated a traffic stop of a car driven by Ammons. Ammons had failed to signal for a turn. Officer Clark approached the passenger's side of Ammons' car, while a back-up police officer, Officer Stout, approached the driver's side. Officer Stout asked Ammons for his driver's license and registration. Ammons did not have either. Am-

---

1. IND.CODE § 35–48–4–6.

2. IND.CODE § 35–48–4–6.

3. IND CODE § 35–47–2–1.

mons told the officers his name. Officer Stout asked Ammons to exit his vehicle so that he would not have to stand in the street while obtaining additional information. Ammons walked to the rear of his car where Officer Stout wrote down additional information.

When asked whether he possessed weapons or drugs, Ammons replied no. Officer Stout then asked Ammons "if he would mind if we searched his car?" Ammons stated "he didn't mind." Prior to searching the vehicle, Officer Stout conducted a pat-down of Ammons. During this pat-down, Officer Stout found cocaine in Ammons' left front pocket. At . that point, Ammons was placed under arrest and Officer Clark began a search of the car. Officer Clark found a loaded handgun on the floor next to the center console on the driver's side.

Ammons was charged by Information on April 12, 2001. Prior to trial, Ammons filed a motion to suppress the evidence of the cocaine and gun. At the June 22, 2001 motion to suppress hearing, the trial court appeared to grant the motion with regard to the cocaine but deny the motion with regard to the gun. However, at the end of the hearing, the State raised the issue of whether the inevitable discovery rule was applicable, to which the trial court replied that the parties would be permitted to further brief the issue. On July 27, 2001, the trial court denied the motion to suppress as to both the cocaine and the gun. The trial court subsequently granted Ammons' petition to certify an order for interlocutory appeal and this Court accepted jurisdiction on October 5, 2001.

### Discussion and Decision

Ammons contends that the trial court erroneously denied his motion to suppress "because the cocaine and the handgun were found pursuant to searches in violation of the Fourth Amendment and Article I, Section 11 of the Indiana Constitution." Appellant's Brief at 4. More specifically, Ammons argues that the arresting police officers exceeded the scope of a traffic stop, did not receive Ammons' voluntary consent to search his car, and that the inevitable discovery doctrine did not apply to remedy these deficiencies. · We address each of these arguments in turn.

*Standard of Review—Motion to Suppress*

Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997). We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Id.* "We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling." *Id.* However, this review is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Caudle v. State,* 749 N.E.2d 616, 618 (Ind.Ct.App.2001), *trans. denied.*

*Rules of Law—The Fourth Amendment to the United States Constitution and Article I, Section· 11 of the Indiana Constitution*

■ The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect against unreasonable searches and seizures. *Wilson v. State,* 754 N.E.2d 950, 954 (Ind.Ct.App.2001). The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protection of the Fourth Amendment extends to a person's effects, which include automobiles, though to a lesser degree than it protects homes. *Brown v. State,* 653 N.E.2d 77, 81 (Ind.1995) (citing *Cady v. Dombrowski,* 413 U.S. 433, 439–440, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). Article I, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Automobiles are among the "effects" protected by Article I, Section 11. *Brown,* 653 N.E.2d at 79 (Ind.1995). "The purpose of Article One, section Eleven is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Shultz v. State,* 742 N.E.2d 961, 965 (Ind.Ct.App.2001), *trans. denied.* (quoting *Brown,* 653 N.E.2d at 79). Both trial and appellate courts consider "each case on its own facts to decide whether the police behavior was reasonable." *Id.* Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Ratliff v. State,* 753 N.E.2d 38, 42 (Ind.App.2001). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Id.* Under the Indiana Constitution the State must show that a search was reasonable in light of the totality of circumstances. *Trowbridge v. State,* 717 N.E.2d 138, 144 (Ind.1999).

### Traffic Stops—Exiting the Vehicle and Pat–Downs

■ In the instant case, the intersection of law and fact takes place within the context of a traffic stop.

A traffic stop is more akin to an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than a custodial arrest. *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984). The United States Supreme Court in *Terry* stated the issue of unreasonableness of an investigative stop properly considers whether the officer's actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court observed that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* at 500, 103 S.Ct. at 1325–26, 75 L.Ed.2d at 238.

*Lockett v. State,* 747 N.E.2d 539, 541–42 (Ind.2001).

■ Ammons was pulled over for failing to signal for a turn. Seated in his vehicle, Ammons was unable to produce his license or registration, but simply gave his name to Officer Stout. Officer Stout then requested that Ammons exit the vehicle.

> A: Then I asked [Ammons] to walk back to the car with me so I wouldn't be standing out in the street writing the information down. We walked to the rear of the car and I obtained his information there.

(Tr. 16). In *Lockett v. State,* 747 N.E.2d at 542, the Indiana Supreme Court recog-

nized that the Fourth Amendment permits requesting a motorist stopped for a traffic violation to exit a car. In *Mitchell v. State,* 745 N.E.2d 775, 788 (Ind.2001), our supreme court held that "[a] reasonable search under [Article 1,] Section 11 [of the Indiana Constitution] would permit an officer to briefly detain a motorist only as necessary to complete the officer's work related to the illegality for which the motorist was stopped." As such, the pertinent issue remains whether Officers Clark and Stout used investigative methods that were reasonable, in scope, duration, and relation to the stop. Here, Officer Stout's request for Ammons to exit his car caused minimal intrusion, allowed Officer Stout to attain further necessary identifying information, and alleviated the need for him to continue to stand in the roadway. Accordingly, Officer Stout's request that Ammons exit the car was a reasonable one.

However, Officer Stout's subsequent pat-down of Ammons was not adequately supported by officer safety concerns and as such was unreasonable. "A routine traffic stop ... is a relatively brief encounter and 'is more analogous to a so-called *"Terry* stop" ... than to a formal arrest.'" *Wilson,* 745 N.E.2d at 791–92 (citing *Knowles v. Iowa,* 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (quoting *Berkemer v. McCarty,* 468 U.S. at 439, 104 S.Ct. 3138)). *Terry* provides for a:

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry,* 392 U.S. at 27, 88 S.Ct. 1868. Here, Officer Clark testified as follows:

> Q: Okay, you didn't observe [Ammons] commit any crimes did you?
>
> A: No.
>
> Q: ... any reason to believe that he committed any crime ... ?
>
> A: No, other than a traffic violation, no ma'am.

(Tr. 11). While Officer Stout's testimony contained only the barest of safety concerns:

> Q: ... why did you take the defendant back behind the car for the purposes of getting information?
>
> A: It's a safety issue. I don't want to stand in traffic and have to write in my notebook and also have to watch him. It's easier for me to do that while I can see him, while I'm writing, I can stand in front of him out of traffic, look at my notebook and see him in the background while I write.
>
> ....
>
> Q: ... and the pat down itself, why did you do that?
>
> A: For my safety again, to make sure that he didn't have weapons.

(Tr. 25). This testimony, against the factual backdrop of a traffic violation by a single vehicle occupant, with two responding officers, falls short of describing circumstances under which a reasonably prudent person would believe that his safety or the safety of others was in danger. *See Camp v. State,* 751 N.E.2d 299, 302 (Ind. Ct.App.2001) (holding in part that "[b]ecause the limitations on *Terry* searches exist to protect citizens from police intrusions on constitutionally-protected liberties, we emphasize that a police officer cannot justify a *Terry* search simply by asserting his status as a police officer or his experience in that profession.") *See*

*also Wilson,* 745 N.E.2d at 791 (emphasizing that an officer is to use the least intrusive means necessary to investigate a traffic stop). Accordingly, Officer Stout performed an unjustified pat-down of Ammons.

### Consent to Search a Vehicle

 A valid consent to search is an exception to the warrant requirement. *Callahan v. State,* 719 N.E.2d 430, 434 (Ind.Ct.App.1999). The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Id.* When the State relies upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Thurman v. State,* 602 N.E.2d 548, 552 (Ind.Ct. App.1992). Here, it is undisputed that just prior to submitting to the pat-down, Ammons consented to a search of his car. However, Ammons contends that the officer's request to search his car exceeded the scope of the traffic stop and that his consent was not voluntary but rather "merely a submission to the supremacy of the law." Appellant's Brief at 13. We are unpersuaded.

In *Callahan,* 719 N.E.2d 430, the defendant was stopped by police officers because the vehicle he was driving had improperly tinted windows and a Texas license plate that appeared to have expired. Callahan conceded that the stop to investigate the alleged traffic violations was lawful and that his subsequent consent to search his car was objectively voluntary. However, Callahan argued "that his consent was not subjectively voluntary and that his Article 1, [S]ection 11 privacy right under the Indiana Constitution was infringed by the officer's request that he give consent without either a specific advisement of the right to refuse

consent or independent reasonable suspicion of some additional illegal activity." *Id.* at 435. Considering the totality of the circumstances, we held that Callahan's consent was voluntary and "that the State had met its burden of proving an exception to the warrant requirement which rendered an otherwise unreasonable search presumably reasonable." *Id.* at 439.

 The totality of the circumstances test reads as follows:

> The "totality of the circumstances" from which the voluntariness of a detainee's consent is to be determined includes, but is not limited to, the following considerations: (1) whether the defendant was advised of his Miranda rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search.

*Callahan,* 719 N.E.2d at 435 (Ind.Ct.App. 1999) (citing *State v. Scheibelhut,* 673 N.E.2d 821, 824 (Ind.Ct.App.1996)). In *Callahan,* this test was applied to the following facts: Callahan's liberty was not restrained and therefore his *Miranda* rights were not read to him prior to the search; Callahan appeared of reasonable intelligence and not under the influence of drugs or alcohol; after being issued a warning ticket Callahan was told that he was free to go; Callahan was told that he

did not have to "cooperate" with a search of his vehicle; and, Callahan then consented to the search. From these facts, we determined that Callahan's consent was voluntarily given. Moreover, because Callahan was told that he was free to go and need not cooperate further we did not need to reach Callahan's assertion that our state constitution goes beyond the federal Constitution to require a bright-line requirement that voluntary consent requires an advisement of the right to refuse consent to search. Lastly, while troubled by the lack of independent reasonable suspicion for requesting the search of Callahan's car, we nevertheless concluded that Callahan's clear and voluntary consent rendered the search reasonable.

More recently, in *Camp v. State*, 751 N.E.2d 299, we reiterated our concerns about searches and seizures that take place following lawful traffic stops that may be pretextual in nature. There, a police officer saw the defendant briefly stop his car at 4:30 in the morning in a high crime area while a passenger briefly conversed and received something from a residence and then returned to defendant's car. When the defendant began driving again he failed to come to a complete stop at an intersection and was pulled over. Despite finding that the officer's subsequent request to search defendant's vehicle was not justified, we again held that the justifications for the search were not dispositive because of Camp's consent to search, which was deemed voluntary after applying the totality of the circumstances test. *Id.* at 304.

■ Here, the scant but uncontroverted evidence reveals that Ammons voluntarily consented to the search of his car.

We begin with Ammons' unequivocal testimony:

> Q: Okay, now the police stated that you gave [Officer Stout] consent to search your car, is that correct?
>
> A: Yes.

(Tr. 27). As further acknowledged by Ammons in his brief to this Court, this consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *See* Appellant's Brief at 8 correctly citing *Thurman*, 602 N.E.2d at 552 (Fourth Amendment) and *Callahan*, 719 N.E.2d at 435 (Indiana Constitution). At the time of Ammons' consent he was not under arrest and therefore did not have his *Miranda* rights read to him. Further, Ammons does not allege any illegal police officer action or deception. Rather, Ammons contends that he submitted to the request of Officer Stout "because he figured they were going to search his car anyway." Appellant's Brief at 13. However, here, where the show of force consisted of flashing lights, two officers, a request for license and registration, followed by a request that Ammons exit the vehicle and give identifying information, we cannot say that such a context compels *submission* to a search. *Cf. Thurman*, 602 N.E.2d at 552 (where "five or six police officers swooped in on [the defendant] and his companions, blocking the exit and ordering them out of the Oldsmobile" and we found that the defendant's consent to search his vehicle was "merely submission to the supremacy of the law rather than a voluntary relinquishment of a known right.") Thus, Ammons' consent to search his car was voluntary.[4]

---

4. Moreover, to hold otherwise would give undue weight to the fact that Ammons was not advised of his right to refuse consent, bringing this Court perilously close to creating a per se advisement rule—a result which we have previously rejected. *See State v. Scheibelhut*, 673 N.E.2d at 824.

### The Inevitable Discovery Doctrine

Under the Fourth Amendment, the inevitable discovery exception to the exclusionary rule "permits the introduction of evidence that eventually would have been located had there been no error, for in that instance 'there is no nexus sufficient to provide a taint.'" *Shultz v. State*, 742 N.E.2d at 965 (quoting *Banks v. State*, 681 N.E.2d 235, 239 (Ind.Ct.App. 1997)) (quoting *Nix v. Williams*, 467 U.S. 431, 438, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). However, the inevitable discovery exception has not been adopted as a matter of Indiana constitutional law. *Shultz*, 742 N.E.2d at 966 n. 1. Our state supreme court has previously held that "our state constitution mandates that the evidence found as a result of [an unconstitutional] search be suppressed." *Id.* (quoting *Brown v. State*, 653 N.E.2d at 80). In light of this clear language we are not inclined to adopt the inevitable discovery rule as Indiana constitutional law. Accordingly, the inevitable discovery doctrine is not available to validate the evidence of cocaine recovered from Ammons' person as a result of Officer Stout's unjustified pat-down.[5]

### Conclusion

Officer Stout performed an illegal pat-down of Ammons. However, prior to the illegal pat-down, Ammons voluntarily consented to a search of his car, which rendered Officer Clark's search of Ammons' vehicle and recovery of his handgun legal. Nevertheless, because we hold that the inevitable discovery rule is not applicable under Article 1, Section 11 of the Indiana Constitution, the cocaine recovered from Ammons' person remains suppressed. In sum, the trial court is instructed to grant Ammons' motion to suppress the cocaine but deny his motion in regards to the handgun.

Affirmed in part, and reversed in part.

NAJAM, J., concurs.

ROBB, J., concurs in result.

---

5. Moreover, even if the inevitable discovery exception were applicable under our state constitution this Court is not convinced that the State established that the cocaine would have *inevitably* been discovered. The inevitable discovery exception to the rule permits the introduction of evidence *that eventually would have been located* had there been no error. *Nix v. Williams*, 467 U.S. at 448, 104 S.Ct. 2501.