## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 24 2020, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derrick McNeal, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | June 24, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-1780 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven J. Rubick, Magistrate <br><br> The Honorable Jennifer Harrison, Judge <br><br> Trial Court Cause No. <br> 49G20-1807-F3-22570 |

**Brown, Judge.**

[1] Derrick McNeal appeals his convictions for possession of a narcotic drug as a level 5 felony and possession of marijuana as a class B misdemeanor. He raises one issue which we restate as whether the trial court abused its discretion by admitting certain evidence. We affirm.

## Facts and Procedural History

[2] McNeal was the subject of an arrest warrant with respect to a "level 5 cocaine case" and was also the suspect in two separate homicide investigations conducted by Indianapolis Metropolitan Police Detectives Erica Jones and Mark Howard. Transcript Volume II at 18. Detective Jones informed Indianapolis Metropolitan Police Detective Erik Forestal that the handgun used in the homicide she was investigating had not been recovered. She informed him that McNeal's nephew was also a suspect and had been interviewed and released because there was not "enough evidence at that time to arrest him." *Id.* at 7. Detective Jones also told him that she would like to apply for a search warrant for firearms and other evidence related to her homicide investigation if McNeal was located at a residence.

[3] Detective Forestal received information that McNeal was at a residence on Kristen Court in Marion County, began conducting surveillance of the residence at around 8:00 p.m. on June 26, 2018, and observed McNeal exit the front door and sit on the front porch. Detective Forestal conducted surveillance for thirty to forty-five minutes, called detectives for assistance, waited until approximately five other officers or detectives arrived, and had an officer proceed to the back of the residence.

[4] Detective Forestal drove up to the house and exited his undercover vehicle while wearing a police vest with a badge, and McNeal ran back inside the house once he saw him and "veer[ed] to the left." *Id.* at 8. Detective Forestal yelled at McNeal to stop, but he did not comply. Detective Forestal ran up to the front door but did not pursue McNeal into the residence. He ordered McNeal to exit the house, and McNeal complied in approximately thirty seconds to one minute and was taken into custody on the walkway in front of the house and handcuffed. Detective Forestal did not find any drugs, baggies, paraphernalia, or weapons on McNeal. Two females then exited the house leaving the door to the residence open.

[5] Detective Forestal called Detective Howard, who told him that he was going to apply for a search warrant and requested Detective Forestal remain at the residence. Detective Forestal entered the residence with several other officers to make sure there were no threats present to the officers, and observed what he believed to be marijuana and either cocaine or heroin in a separate bag next to it on the couch in the front living room.

[6] That same day, Detective Howard completed a search warrant affidavit, and a judge issued a search warrant for firearms and accessories, bullets, documents, DNA, fingerprints, cell phones, photographs, drugs, and drug paraphernalia. Indianapolis Metropolitan Police Detective Michael Condon collected the narcotics that were observed in plain view, but did not find any other narcotics, paraphernalia, ledgers, or guns.

On July 12, 2018, the State charged McNeal with Count I, dealing in a narcotic drug as a level 3 felony, Count II, possession of a narcotic drug as a level 5 felony, and Count III, possession of marijuana as a class B misdemeanor. On March 15, 2019, McNeal filed a motion to suppress evidence obtained in violation of the Fourth Amendment of the United States Constitution.

On April 9, 2019, the court held a hearing on McNeal's motion. When asked to describe holding his position at the residence while awaiting the warrant, Detective Forestal answered: "It's basically to secure the residence to make sure that there's no people inside that are threats or that can destroy any evidence that might be seized during the search warrant." *Id.* at 10. He indicated he entered the home to make sure there were no threats to the officers. He testified that one of the main concerns was that McNeal's nephew, who was the possible other suspect in the homicide investigation, could be in the residence. During cross-examination McNeal's counsel asked him: "And you didn't have any information that Mr. McNeal would be with his nephew that day – on June 26th, right?" *Id.* at 18. Detective Forestal answered: "The information Detective Jones provided me that they would likely be together." *Id.* He also indicated the provided information showed that there was not enough evidence to arrest the nephew. At the end of the hearing, the court found that the protective sweep was reasonable. After some discussion regarding the search warrant, McNeal's counsel indicated that she had a copy of the search warrant and mentioned "defense A." *Id.* at 28. The court stated it needed to review the search warrant and continued the hearing.

On April 16, 2019, the court resumed the hearing, heard argument, and found that the protective sweep was valid and that probable cause existed for the issuance of the search warrant and denied the motion to suppress.

On June 11, 2019, the State alleged McNeal was an habitual offender. On June 12, 2019, the court held a jury trial. The jury found McNeal guilty of Count II, possession of a narcotic drug, and Count III, possession of marijuana as a class B misdemeanor, and not guilty of Count I, dealing in a narcotic drug as a level 3 felony. McNeal admitted the factual basis sufficient to enhance Count II to a level 5 felony. The State moved to dismiss the habitual offender enhancement, and the court granted the motion. The court sentenced McNeal to four years for Count II and 180 days for Count III and ordered the sentences to be served concurrently.

## *Discussion*

Although McNeal originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Jefferson v. State*, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), *trans. denied*; *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect

of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly erroneous, views conflicting evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[13] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Id.* If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014).

[14] McNeal argues that the initial search did not constitute a valid search incident to arrest or protective sweep, the police cannot obtain a warrant "after the fact to exploit an initial illegal warrantless entry and search," and the admission of the evidence was not harmless. Appellant's Brief at 16. The State argues that the drugs were found during a valid protective sweep and that, even if the

protective sweep was unreasonable, the drugs were still admissible under the inevitable discovery exception because the detectives would have applied for the search warrant even if the protective sweep did not occur.

[15] The Fourth Amendment to the United States Constitution provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "Though a 'fluid concept,' probable cause exists when the affidavit establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Heuring v. State*, 140 N.E.3d 270, 273 (Ind. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 238, 103 S. Ct. 2317 (1983)). "Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime." *Meister v. State*, 933 N.E.2d 875, 879 (Ind. 2010). If the search is conducted without a warrant, the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016).

[16] The United States Supreme Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*,

494 U.S. 325, 327, 110 S. Ct. 1093, 1094 (1990). As an incident to arrest officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334, 110 S. Ct. at 1098. A search beyond those parameters is permissible only when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

[17] The record reveals that McNeal was arrested on the walkway directly in front of the house and the drugs were discovered in plain view in the front living room. The record contains a photograph of the aerial view of the residence and front walkway leading to the house where McNeal was apprehended, as well as photographs of the front living room which were taken from just inside the front door of the residence. Detective Forestal testified that the door to the residence remained open after the females exited and before the protective sweep began. Under these circumstances, we conclude that the State demonstrated that the front living room was a space immediately adjoining the place of arrest from which an attack could be immediately launched. We note that McNeal ran back inside the house once he saw Detective Forestal, veered to the left, and remained in the house for approximately thirty seconds to one minute. Detective Forestal knew that McNeal was a suspect in two separate homicide investigations, the handgun used in one of the homicides had not been

recovered, McNeal's nephew was also a suspect, and McNeal would likely be with his nephew. We cannot say that the trial court erred in concluding that the protective sweep was proper or in admitting the evidence.

[18] Further, the drugs observed in plain view during the sweep did not constitute the sole basis upon which the probable cause affidavit in support of the search warrant relied,[1] and they would have been inevitably and lawfully discovered in the execution of the search warrant. Therefore, even if the protective sweep was improper, reversal is not warranted. "[T]he inevitable discovery exception to the exclusionary rule permits the introduction of evidence that eventually would have been located had there been no error." *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001) (quotations and citations omitted), *reh'g denied*, *trans. denied*. "Where a search warrant is based on both legally obtained information and information obtained in contravention to the Fourth Amendment, we will determine the legitimacy of the warrant only in light of the legally obtained information." *Perez v. State*, 27 N.E.3d 1144, 1153 (Ind. Ct. App. 2015) (citing *Davis v. State*, 907 N.E.2d 1043, 1051-1052 (Ind. Ct. App. 2009)), *trans. denied*. *See Perez*, 27 N.E.3d at 1153 (holding that, "excising from the probable cause affidavit the information learned from" an unconstitutional

---

[1] The probable cause affidavit signed by Detective Howard indicated that victim Robert McNeal was last seen with McNeal and his nephew and that the victim and McNeal had a falling out and a fight; a vehicle matching the description of the vehicle observed at the murder scene and containing three of the same numbers on the license plate was registered to McNeal's sister-in-law who stated that only she or McNeal had driven the vehicle in the prior two weeks; and the owner of the residence, McNeal's niece, had advised that McNeal had been living with her there for the past week.

canine sniff, the issuing magistrate still had sufficient information to make a practical, common-sense decision that, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place, and that despite the illegal search of the defendant's front door in violation of the Fourth Amendment, there was enough untainted information in the probable cause affidavit to support the issuance of the search warrant); *Shultz*, 742 N.E.2d at 965 (holding that the illegal search for the VIN was of no consequence under Fourth Amendment jurisprudence, observing that the illegally obtained VIN was not the sole ground relied upon in the probable cause affidavit for the search warrant, and holding that police could have secured a warrant without the partial VIN and that the partial VIN and all the remaining evidence would have been inevitably and lawfully discovered in the execution of the search warrant).

[19] For the foregoing reasons, we affirm McNeal's convictions.

[20] Affirmed.

Najam, J., and Kirsch, J. concur.