*hart v. State*, 671 N.E.2d 893, 903 (Ind.Ct. App.1996); *Staton v. State*, 640 N.E.2d 741, 743 (Ind.Ct.App.1994). The sentencing court in this case, however, imposed the advisory ten year sentence on each Class B felony. It did not, therefore, both enhance the sentences and run them consecutively.

Subject to the above caveat, I concur in the revision of the sentences as set forth in the majority opinion.

**C.L.M., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 35A05–0706–JV–342.

Court of Appeals of Indiana.

Oct. 3, 2007.

ever, at the time of sentencing in this case, all of those charges were still pending.

John G. Clifton, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez, II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

C.L.M., who was nine years old at the relevant time, appeals his adjudication as a delinquent child for committing what would have constituted Class C felony child molesting if committed by an adult for touching or fondling his three-year-old

half-sister with intent to arouse or satisfy his sexual desires. Specifically, he argues that the trial court erred in admitting statements he made to a police officer during an interview at a child advocacy center into evidence because he was in custody and not given a *Miranda* warning. Finding that the trial court abused its discretion in admitting C.L.M.'s statements into evidence because he was in custody at the time and therefore should have been given a *Miranda* warning and that the State has not shown that the admission of C.L.M.'s statements did not contribute to his adjudication, we reverse the trial court.

### Facts and Procedural History[1]

Sheila Bradley ("Sheila") is the mother of C.L.M., W.B., and A.B.[2] On May 20 or 21, 2006, when C.L.M. was nine years old, Sheila walked into the living room of her home to find W.B., who was five years old at the time, sitting on one end of the couch and C.L.M. sitting on the other end of the couch with A.B., who was three years old at the time, lying on top of his stomach. C.L.M.'s and A.B.'s stomachs were touching. According to Sheila, "[A.B.] had her pants down to her knees and underwear on," and C.L.M.'s pants were "down to his thighs and his underwear was on." Tr. p. 132. C.L.M.'s hands were on A.B.'s hips, and C.L.M. and A.B. were "in a motion." *Id.* Specifically, C.L.M.'s hands were "pushing [A.B.] down." *Id.* Sheila, who did not see their "private areas touching," immediately "yanked" the children off each other. *Id.* at 132, 142.

A child advocacy team was assembled for the purpose of interviewing the family about the incident. Team members included an investigator from the prosecutor's office, Department of Child Services caseworker Karena Hernandez, and Detective Mel Hunnicutt from the Huntington City Police Department. On May 23, Caseworker Hernandez left a message for Sheila to bring her children to the Child Advocacy Center the following morning for an interview. When Caseworker Hernandez had not received confirmation from Sheila, Detective Hunnicutt went to Sheila's house to make sure that she and the children were going to show up for the interview.

On the morning of May 24, Sheila brought her children to the Child Advocacy Center for an interview. Upon arrival, Sheila was informed about the purpose of the interview—to investigate allegations of child molesting—and how the process was going to work, and Sheila told them what she had witnessed at her home that day. Detective Hunnicutt then interviewed C.L.M. alone. During this interview, Detective Hunnicutt told C.L.M. that there were allegations that C.L.M. had touched A.B. inappropriately, and C.L.M. responded that it was A.B.'s idea that they "hump[ ]." *Id.* at 150. C.L.M. also made some vague allegations that his stepbrothers had attempted to molest him in the past. After W.B. and A.B. were interviewed about the incident, Detective Hunnicutt interviewed C.L.M. alone for a second time to address some inconsistencies in the children's statements and to further explore C.L.M.'s allegations that his stepbrothers had attempted to molest him in the past. During this second interview,

1. We note that C.L.M.'s Statement of Facts consists only of two sentences, which he quotes from the Petition Alleging Delinquency. Pursuant to Indiana Appellate Rule 46(A)(6), the Appellant's Statement of Facts "shall describe the facts relevant to the issues presented for review," "shall be supported by page references," and "shall be stated in narrative form."

2. C.L.M. has a different father than W.B. and A.B.

C.L.M. admitted that he initiated the contact with A.B. and that he touched A.B.'s "crotch" with his hand. *Id.* at 153. When Detective Hunnicutt asked C.L.M. how it felt when he and A.B. were "humping," C.L.M. said, "I don't know." *Id.* at 158. After the interviews, C.L.M. left the Child Advocacy Center with his mother.

On July 5, 2006, the State filed a Petition Alleging Delinquency alleging that C.L.M. was a delinquent child for committing what would have constituted Class C felony child molesting[3] if committed by an adult. Specifically, the Petition alleged that C.L.M. "performed or submitted to touching or fondling of a child or himself with the intent to arouse or satisfy his own sexual desires or the sexual desires of the child, when the child was under (14) years of age, to wit; A.L.B., whose DOB is 12/15/2002." Appellant's App. p. 63. Thereafter, C.L.M. filed a motion to suppress his statements to Detective Hunnicutt on grounds that he was in custody and not given a *Miranda* warning. Following a hearing, the trial court denied C.L.M.'s motion to suppress.[4] A fact-finding hearing was then held. At the fact-finding hearing, C.L.M. presented testimony from his expert witness that because of his young age, he could not form the cognitive

intent to satisfy his sexual desires. After taking the matter under advisement, the trial court issued an order adjudicating C.L.M. a delinquent child.[5] Following a dispositional hearing, the trial court continued C.L.M.'s placement in foster care and ordered him to serve twelve months of probation. C.L.M. now appeals.

### Discussion and Decision

■ C.L.M. raises two issues on appeal, one of which we find dispositive.[6] That is, he contends that the trial court erred in admitting his statements to Detective Hunnicutt into evidence because he was in custody and not given a *Miranda* warning. A trial court has inherent discretionary power over the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *Vasquez v. State*, 868 N.E.2d 473, 476 (Ind. 2007).

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that when law enforcement officers question a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way," the person must first "be warned that he has a

---

3. Ind.Code § 35–42–4–3(b).

4. The CCS indicates that the trial court entered "Findings and Order on Motion to Suppress." Appellant's App. p. 184 (November 3, 2006, entry). However, C.L.M. did not include the Findings and Order in his appendix. As for the items that C.L.M. did include in his 186–page appendix, C.L.M. listed them in the Table of Contents as "The Clerks Record, Including the Chronological Case Summary." Indiana Appellate Rule 50(C) provides, "A table of contents shall be prepared for every Appendix. The table of contents shall specifically identify each item contained in the Appendix, including the item's date." C.L.M.'s failure to specifically identify each item contained in his appendix has hindered our review on appeal.

5. Once again, the CCS indicates, "Court having heard evidence at fact finding hearing on the 14th day of November 2006 and having taken the matter under advisement now enters Court Order." Appellant's App. p. 184 (November 22, 2006, entry). However, C.L.M. did not include the Court Order in his appendix.

6. C.L.M. also argues that the evidence is insufficient to support his adjudication because his expert testified at the fact-finding hearing that because of his age, he could not form the cognitive intent to satisfy his sexual desires. Given our resolution of the *Miranda* issue, we need not address this issue.

right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Luna v. State,* 788 N.E.2d 832, 833 (Ind.2003) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602). As a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of a *Miranda* warning nor the juvenile waiver statute, Indiana Code § 31–32–5–1,[7] is implicated. *A.A. v. State,* 706 N.E.2d 259, 261 (Ind.Ct.App.1999). For an interrogation to be custodial in nature, one does not necessarily have to be under arrest. *Id.* To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *Id.; see also Luna,* 788 N.E.2d at 833 ("When determining whether a person was in custody or deprived of his freedom, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (quotation omitted). This is determined by examining "whether a reasonable person in similar circumstances would believe he is not free to leave." *Luna,* 788 N.E.2d at 833.

Here, after receiving a phone call from a Department of Child Services caseworker and a home visit from a police officer, Sheila brought her children to the Child Advocacy Center for the purpose of investigating allegations of child molesting. After Sheila told them what she had witnessed at her home that day, Detective Hunnicutt interviewed C.L.M., who was nine years old at the time, alone twice. It is undisputed that C.L.M. was neither read his *Miranda* rights nor given an opportunity to consult with his mother before either of the interviews. Although C.L.M. was never told that he was under arrest or in custody, he was never told that he was *not* under arrest or *not* in custody or that he *was* free to leave, either. At one point during the interview process, C.L.M. indicated that he did not want to talk anymore. However, Detective Hunnicutt did not tell C.L.M. that he was free to leave at that point but instead changed the topic of discussion.

Under these circumstances, we conclude that a reasonable person in similar circumstances would not believe that he was free to leave. C.L.M. was nine years old, was driven to the Child Advocacy Center by his mother after a police officer came to their house to ensure their attendance at the interview, was never told that he was free to leave, and was interviewed alone on two separate occasions by that same police officer regarding allegations that he mo-

---

**7.** Although this statute is not at issue in this case because C.L.M. was never given a *Miranda* warning and therefore did not have an opportunity to even waive his *Miranda* rights, Indiana Code § 31–32–5–1 provides:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

  (A) that person knowingly and voluntarily waives the right;

  (B) that person has no interest adverse to the child;

  (C) meaningful consultation has occurred between that person and the child; and

  (D) the child knowingly and voluntarily joins with the waiver; or

(3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:

  (A) the child knowingly and voluntarily consents to the waiver; and

  (B) the child has been emancipated under IC 31–34–20–6 or IC 31–37–19–27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

lested his three-year-old half-sister. Because C.L.M. was in custody, he should have been given a *Miranda* warning. Accordingly, the trial court abused its discretion in admitting C.L.M.'s statements to Detective Hunnicutt into evidence.

 Nevertheless, the State argues that statements obtained in violation of *Miranda* are subject to harmless error analysis. *See Kelley v. State,* 825 N.E.2d 420, 428 (Ind.Ct.App.2005). When determining whether an error is harmless, our review is *de novo,* and the error must be harmless beyond a reasonable doubt. *Id.* at 428–29. The State must show that the admission of evidence did not contribute to the conviction. *Id.* at 429. To say that an error did not contribute to a conviction is to conclude that the error is unimportant in relation to everything else considered by the trial court on the issue in question, as revealed in the record. *Id.*

Here, Sheila testified at the fact-finding hearing that on the day in question, she walked into the living room of her home to find C.L.M. sitting on the couch with A.B. lying on top of his stomach. Both children had their underwear on, but A.B. had her pants pulled down to her knees, and C.L.M. had his pants pulled down to his thighs. C.L.M. had his hands on A.B.'s hips and was pushing A.B. down. Sheila did not see their "private areas touching." Tr. p. 142. C.L.M., however, told Detective Hunnicutt that he and A.B. were "humping," he initiated the contact with A.B., and he touched A.B.'s "crotch" with his hand. To have C.L.M. adjudicated a delinquent child for committing an act that would have constituted Class C felony child molesting if committed by an adult, the State was required to prove that C.L.M. performed or submitted "to any fondling or touching" with "intent to arouse or to satisfy the sexual desires of either" A.B. or himself. *See* I.C. § 35–42–4–3. Given the incriminating nature of C.L.M.'s statements to Detective Hunnicutt, the State has not shown that the admission of the statements was unimportant in relation to everything else considered by the trial court on the issue in question. We therefore reverse C.L.M.'s adjudication as a delinquent child for committing what would have constituted Class C felony child molesting if committed by an adult.

Reversed.

BAKER, C.J., and BAILEY, J., concur.