# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RANDALL V. SORRELL**
**CHRISTIANNE L. BROCK**
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 04 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

LAWRENCE GYAMFI,                    )
                                    )
    Appellant-Defendant,         )
                                    )
      vs.                       )          No. 30A01-1311-CR-487
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Plaintiff.          )

APPEAL FROM THE HANCOCK CIRCUIT COURT
The Honorable Richard D. Culver, Judge
Cause No. 30C01-1206-FD-912

**September 4, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Lawrence Gyamfi (Gyamfi), appeals his conviction for Count I, fraud, a Class D felony, Ind. Code § 35-43-5-4(1), Count II, theft, a Class D felony, I.C. § 35-43-4-2(a), and Count III, forgery, a Class C felony, I.C. § 35-43-5-2(b)(1).

We reverse and remand.

## ISSUE

Gyamfi raises three issues, one of which we find dispositive and which we restate as: Whether the trial court abused its discretion by admitting certain evidence which was derivative of evidence obtained during an unlawful search and seizure.

## FACTS AND PROCEDURAL HISTORY

On May 31, 2012, at 12:46 a.m. and 12:47 a.m., two charges were made to a Discover Card at the Speedway store located in Greenfield, Hancock County, Indiana (the Hancock County Transaction). The Discover Card belonged to Sarah Whitmer (Whitmer), who resides in New Holland, Pennsylvania.

That same day, at approximately 1:45 a.m., Whitestown Police Officer Nate Harves (Officer Harves) was dispatched to Love's Truck Stop in Boone County on a report that two individuals were attempting to purchase electronic tablets with a stolen credit card. After he arrived at the truck stop, Officer Harves detained the individuals,

who were identified as Gyamfi and David Asiedu.[1]  While Gyamfi was detained, Officer Harves searched his person and vehicle and located Gyamfi's personal identification, several credit cards, and a receipt showing the Hancock County Transaction.  Upon finding the receipt, Officer Harves contacted the Speedway store in Hancock County to inform it that the transaction might have involved a stolen credit card and to make a recording of the camera surveillance from around the time of the transaction.

At approximately 8:00 a.m., Officer Harves' shift ended; he informed Detective Scott Ralston of the Whitestown Police Department (Detective Ralston), of the arrest and handed him his report and further information, which contained his notes on the Hancock County Transaction.  Officer Harves told Detective Ralston about the Hancock County Transaction and advised him to "check out the Speedway in Greenfield."  (Transcript p. 74).

At some point between 8:00 a.m. and noon, following his conversation with Officer Harves, Detective Ralston contacted Speedway Corporate Security representative, Brian Seifert (Seifert), who pulled still shots of the Transaction from the surveillance footage.  Also that same day, Detective Ralston contacted Discover Card investigator William McNally (McNally).  During this conversation, McNally emailed Detective Ralston screen shots of the credit account related to the Hancock County Transaction.  Following his call with Discover Card, Detective Ralston called the management at the

---

[1]  The trial court joined Gyamfi's cause with co-defendant's, David Asiedu, cause for trial.  Both defendants were convicted and sentenced together.  Although both defendants instituted separate appeals, Asiedu's appeal of his conviction is handed down on the same date as this case.

3

Speedway store in Hancock County and advised them "that they might want to report a crime." (Tr. p. 32).

Still that same day, May 31, 2012, Detective Ralston contacted Detective Trent Smoll of the Hancock County Sheriff's Department (Detective Smoll) to inform him of the case he was working on in Boone County. Detective Ralston forwarded "some information" to Detective Smoll "so he could continue with a case in [Hancock County.]" (Tr. p. 32). On June 6, 2012, Detective Smoll opened an investigation which resulted in charges, filed on June 26, 2012.

The Boone County prosecutor's office filed charges against Gyambi arising out of his arrest at the Love's Truck Stop. On October 11, 2012, following a hearing on Gyambi's motion to suppress, the Boone County trial court granted the motion and ordered "[e]vidence taken from the persons and the vehicles of [Asiedu] and [Gyamfi] [] suppressed." (State's Exh. 1). Thereafter, the Boone County trial court dismissed all charges arising out of the Boone County incident.

On June 26, 2012, the State filed an Information in the Hancock County Circuit Court, charging Gyamfi with Count I, fraud, a Class D felony, I.C. § 35-43-5-4(1); Count II, theft, a Class D felony, I.C. § 35-43-4-2(a). On November 29, 2012, the State filed a request to amend the charging Information by adding Count III, forgery, a Class C felony, I.C. § 35-43-5-2(b)(1), which was subsequently approved by the trial court. Also on November 29, 2012, Gyamfi filed a motion to dismiss and for discharge, asserting that all of the State's evidence was derivatively gained as a result of information learned or leads obtained in the Boone County cause, which had been suppressed for violation of

4

Gyamfi's federal and state constitutional rights. On January 15, 2013, the trial court conducted a suppression hearing on Gyamfi's motion. On February 13, 2013, the trial court denied the motion to suppress "as to all evidence with the exception of the evidence specifically suppressed" by the Boone County Superior Court. (Appellant's App. p. 5).

On September 10 through September 11, 2013, a jury trial was conducted. At the close of the evidence, the jury found Gyamfi guilty as charged. On October 16, 2013, after a sentencing hearing, the trial court sentenced Gyamfi to concurrent terms of two years on each Count.

Gyamfi now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

During the trial, the trial court admitted the surveillance video depicting the Hancock County Transaction, Whitmer's Discover Card statement, testimony of Whitmer, McNally, and Seifert, as well as testimony of Officer Harves, and Detectives Ralston and Smoll. Gyamfi contends that all of this admitted testimony and evidence was derivatively gained as a result of information or leads obtained during the unlawful search and seizure in Boone County. Thus, Gyamfi maintains that as the evidence and testimony is fruit of the poisonous tree, its admission violated his constitutional rights pursuant to Article I, Section 11 of the Indiana Constitution.

## I. *Standard of Review*

The evidentiary rulings of a trial court are afforded great deference on appeal and are reversed only upon a showing of an abuse of discretion. *Herron v. State*, 801 N.E.2d 761, 768 (Ind. Ct. App. 2004). A claim of trial court error in admitting evidence may not

5

be presented on appeal unless there is a timely trial objection "stating the specific ground of objection, if the specific ground was not apparent from the context." Ind. Evidence Rule 103(a)(1). Therefore, to preserve for appellate review a claimed error in the admission of evidence, a party must make a contemporaneous objection that is sufficiently specific to alert the trial court fully of the legal issue. *See Raess v. Doescher*, 883 N.E.2d 790, 797 (Ind. 2008).

At trial, the surveillance videotape was admitted over Gyamfi's objection, who renewed the objections raised in his motion to suppress. Gyamfi did not object to the testimony of Whitmer, McNally, and Seifert when they explained the Hancock County Transaction to the jury. Gyamfi objected to Officer Harves' testimony "for the reasons previously cited," which the trial court overruled. (Tr. p. 270). Likewise, Gyamfi objected during the testimonies of Detectives Ralston and Smoll based on his previously stated objection and requested to show a continuing objection[2] for the entire testimony. The trial court granted the request for a continuing objection but showed the objection overruled.

As a general rule, failure to object at trial results in the waiver of an issue for purposes of appeal. *Herron v. State*, 801 N.E.2d 761, 765 (Ind. Ct. App. 2004). However, if adherence to the normal rules of appellate procedure would result in the waiver of an error which is so harmful that it operates to deny the appellant fundamental

---

[2] It should be noted that, effective January 1, 2014, "[o]nce the court rules definitely on the record at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Ind. Evid. R. 103(b). Therefore, there no longer is any need to renew an objection or request to show a continuing objection.

due process, an appellate court may "bypass those rules." *Id.* Insofar as Gyamfi failed to object to certain admitted evidence, we will nevertheless address Gyamfi's claim because we conclude that the error in the instant case amounts to just such a fundamental error.

## II. *Fruit of the Poisonous Tree*

Gyamfi contends that the trial court abused its discretion by admitting testimony and evidence which was derivatively gained as a result of information or leads obtained during the unlawful search and seizure in Boone County. Gyamfi maintains that the receipt establishing the Hancock County Transaction was discovered during Officer Harves' search of Gyamfi's vehicle. As this search was declared illegal, all evidence obtained as a result thereof becomes fruit of the poisonous tree, and its admission by the trial court violated Gyamfi's rights pursuant to Article I, Section 11 of the Indiana Constitution.

The purpose of Article I, Section 11 of the Indiana Constitution is "to protect from unreasonable police activity, those areas of life that Hoosiers regard as private." *Trotter v. State*, 933 N.E.2d 572, 580 (Ind. Ct. App. 2010). The "fruit of the poisonous tree" doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. *Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000). In application, the doctrine bars not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure. *Id.* To invoke the doctrine, a defendant must show that the search and seizure was illegal in the

7

first place. *Id.* Where there is no illegal search or seizure, there can be no fruit of the poisonous tree. *Id.*

Here, during the search following Gyamfi's arrest in Boone County, Officer Harves discovered a receipt showing the Hancock County Transaction. Information derived from the receipt prompted Officer Harves to contact the Speedway store and to request a copy of the camera surveillance of the Transaction. In continuation of the investigation, Officer Harves gave all the information to Detective Ralston and told him specifically to "check out the Speedway." (Tr. p. 35). Still that same day, Detective Ralston contacted Mc Nally at Discover Card and Seifert at Speedway Corporate Security. Later that day, Detective Ralston contacted Detective Smoll in Hancock County to apprise him of possible charges in Hancock County.

At trial, Detective Ralston agreed that his decision to contact Discover Card and Speedway Corporate Security came about "as a result of the work that Officer Harves" had done. (Tr. p. 35). Similarly, Detective Smoll testified that all evidence presented in the Hancock County case was "all derived from those [] officers making the stop there in Boone County." (Tr. p. 42). Detective Smoll received all the evidence from Detective Ralston, who "pretty much informed [him] of everything." (Tr. p. 46). He admitted that he "really didn't get any more discovery or information on [his own]." (Tr. pp. 46-47).

The unlawfulness of the search and seizure in Boone County is not contested and the State conceded at trial that the Boone County search was illegal and the evidence that had been suppressed by the Boone County Superior Court should be suppressed by the trial court in the instant cause. While the original receipt of the Hancock County

8

Transaction was excluded by the trial court, it is clear that the contested evidence that was nevertheless admitted amounted to evidence obtained as a direct result of information that Officer Harves had learned during the illegal search. *See Hanna*, 726 N.E.2d at 389.

In an attempt to prevent the application of the doctrine of the fruit of the poisonous tree, the State relies on the alternative theories of attenuation and inevitable discovery.

### A. *Attentuation*

First, the State asserts that the disputed evidence was found by means sufficiently distinguishable so as to be purged of the primary taint of illegality. Specifically, the State maintains that no evidence of Officer Harves' initial and illegal search was admitted; rather, the State contends that all evidence admitted "was found pursuant to Detective Ralston's independent investigation." (State's Br. p. 15).

We agree that not all evidence is fruit of the poisonous tree and subject to suppression simply because it would not have come to light but for illegal police activity. *Wong Sun v. U.S.*, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Fourth Amendment jurisprudence has recognized an exception to the exclusionary rule in cases where the connection between the illegal police conduct and the subsequent discovery of evidence "become[s] so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." *Brown v. Illinois*, 422 U.S. 590, 609, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Specifically, "[i]n some situations, the causal chain is sufficiently attenuated to dissipate any taint of [the illegal police activity], allowing the evidence seized during a

search to be admitted." *Cole v. State*, 878 N.E.2d 882, 887 (Ind. Ct. App. 2007). This is known as the attenuation doctrine.

However, in *Trotter v. State*, 933 N.E.2d 572, 582 (Ind. Ct. App. 2010), we concluded that "the attenuation doctrine as it currently exists as a separate analysis to circumvent the exclusionary rule for Fourth Amendment purposes has no application under the Indiana Constitution." Relying on our supreme court's opinion in *Shotts v. State*, 925 N.E.2d 719, 726 (Ind. 2010), the *Trotter* court reaffirmed Indiana's unique commitment to protecting personal rights, stating that because our jurisprudence focuses on what is "reasonable" under the "totality of the circumstances," Article 1, Section 11 in some cases confers greater protections to individual rights than the Fourth Amendment affords. *Trotter*, 933 N.E.2d at 582. As such, the exclusionary rule is calculated to discourage police misconduct, and application of the rule here serves this deterrent function. Accordingly, as the attenuation doctrine has no place in the jurisprudence of Article 1, Section 11 of the Indiana Constitution, the State cannot prevail under this theory.

### B. *Inevitable Discovery*

Next, the State relies on the inevitable discovery doctrine when it contends that the fraud would eventually have been discovered. In support, the State relies on Whitmer's testimony, stating that she would have checked her credit card statement and would have reported the fraudulent activity to both Discover Card and the police. Furthermore, again disregarding Officer Harves initial investigatory steps, the State also maintains that

10

Detective Ralston's "independent investigation" would ultimately have turned up the evidence that was admitted at trial. (State's Br. p. 15).

Under the Fourth Amendment, the inevitable discovery exception to the exclusionary rule "permits the introduction of evidence that eventually would have been located had there been no error, for in that instance 'there is no nexus sufficient to provide a taint.'" *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001), *trans. denied*. However, the inevitable discovery exception has not been adopted as a matter of Indiana Constitutional law. *Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), *trans. denied*. Our supreme court has previously held that "our state constitution mandates that the evidence found as a result of [an unconstitutional] search be suppressed." *Shultz*, 742 N.E.2d at 965 (quoting *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995)). Despite the State's request, we are not inclined to adopt the inevitable discovery rule as part of Indiana constitutional law in light of our supreme court's firm language. *See Ammons*, 770 N.E.2d at 935. Accordingly, the inevitable discovery doctrine is not available to validate the admission of evidence obtained as a result of an illegal search.

In sum, because the contested evidence was obtained as an immediate result of Officer Harves' illegal search and seizure, the evidence amounted to fruit of the poisonous tree and the trial court abused its discretion by its admittance pursuant to Article 1, Section 11 of the Indiana Constitution. Even though Gyamfi omitted to contemporaneously object to the admission of Whitmer's, McNally's, and Seifert's testimonies when they explained the Hancock County Transaction to the jury, its admission nevertheless amounted to fundamental error as it denied Gyamfi due process.

11

## CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion by admitting the contested evidence which amounted to fruit of the poisonous tree pursuant to Article 1, Section 11 of the Indiana Constitution.

Reversed and remanded.

ROBB, J. concurs and concurs with Bradford, J. concurring in part, concurring in result separate opinion

BRADFORD, J. concurs in part and concurs in result with separate opinion

12

# IN THE
# COURT OF APPEALS OF INDIANA

LAWRENCE GYAMFI,               )
                                     )
    Appellant-Defendant,    )
                                     )
        vs.                  )    No. 30A01-1311-CR-487
                                     )
STATE OF INDIANA,        )
                                     )
    Appellee-Plaintiff.     )

**BRADFORD, Judge, concurring in part, concurring in result.**

I concur with the majority that the trial court abused its discretion in admitting the challenged evidence, *i.e.*, the security tape from the Speedway store located in Greenfield, at trial. However, I write separately to reiterate that I believe that the inevitable discovery rule could apply under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution if the State were to demonstrate by a preponderance of the evidence that the challenged evidence would

have been discovered but for the unlawful search. The State, however, failed to do so here.

In *Clark v. State*, 994 N.E.2d 252, 272 (Ind. 2013), the Indiana Supreme Court recognized an exception to the exclusionary rule, holding that evidence derivative of an unlawful search need not be excluded if it would inevitably have been obtained. The purpose of this exception is that exclusion of the derivative evidence "'would put the police in a worse position than they would have been in absent any error or violation and the deterrence basis of the exclusionary rule would be lost.'" *Clark*, 994 N.E.2d at 272 (quoting *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)). The State bears the burden of proving by a preponderance of the evidence that the inevitable discovery exception applies. *Id*; *LaMunion v. State*, 740 N.E.2d 576, 581 (Ind. Ct. App. 2000) (citing *Nix*, 467 U.S. at 444).

Sarah Whitmer, the primary card holder for the Discover card in question, testified that she reviewed her paper bill every month to check that her purchases were accurately reflected. She further testified that upon noticing the unauthorized charges, she would have notified Discover and disputed the unauthorized charges. The State, however, failed to prove by a preponderance of the evidence that Whitmer's potential act of notifying Discovery of the unauthorized charges would have led to the inevitable discovery of the challenged evidence.

William McNally, the Midwest Field Investigator for Discover, testified that but for the notification of the potential fraud from Detective Ralston,[3] notification of the unauthorized charges from Whitmer would first have gone to the Phoenix Fraud Center. (Tr. 221)  If the Phoenix Fraud Center determined that there was a large enough case of potential fraud, it may have notified McNally, who may have contacted law enforcement. (Tr. 221)  Further, nothing in the record indicates that Brian Siefert, a corporate fraud investigator for Speedway Corporation, would have taken the steps necessary to save the challenged evidence absent the phone call he received from Detective Ralston reporting a potential occurrence of fraud in the Greenfield Speedway store.  When questioned about the catalog life of the challenged evidence, Siefert's testimony was uncertain.  Siefert acknowledged that hard drives "only have so much storage space, whether that be ninety days, one hundred eighty days, etcetera, it tapes over the oldest data in the hard drives." Tr. p. 229.  When asked directly "[h]ow long it would have taken for that section of video to be recorded over," Siefert responded, "I don't know."  Tr. p. 229.

In light of the uncertainty in McNally's and Siefert's testimony, any determination that the challenged evidence would inevitably have been discovered is based on supposition and, as such, cannot support a finding to that effect by a preponderance of the evidence.  Accordingly, I agree with the majority's determination that the trial court abused its discretion in admitting the challenged evidence at trial and concur with the conclusion to reverse Gyamfi's convictions.

---

[3] It is undisputed that Detective Ralston initiated his investigation after receiving a file of information collected by Officer Harves shortly after he conducted the unlawful search in Boone County.