

**FILED**
Jan 28 2015, 6:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

N.S.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

January 28, 2015

Court of Appeals Cause No.
49A05-1407-JV-338

Appeal from the Marion Superior
Court
The Honorable Geoffrey Gaither
Cause No. 49D09-1405-JD-1197

**Bailey, Judge.**

# Case Summary

[1] N.S. was adjudicated a juvenile delinquent for having committed acts that would be Dangerous Possession of a Firearm[1] and Possession of Marijuana,[2] as Class A misdemeanors, if committed by an adult. He appeals the adjudication, presenting the sole issue of whether the juvenile court, having declared a search and seizure of N.S.'s property illegal, abused its discretion by admitting evidence that was a product of the illegal search. We reverse.

# Facts and Procedural History

[2] On May 11, 2014, Officer Brian Erdmann of the Clermont Police Department received a report of a stolen vehicle. Approximately thirty minutes after the report, Officer Erdmann located the stolen vehicle at a gas station. D.M., the driver, and N.S., the back seat passenger, were placed under arrest.

[3] Officer Erdmann expected that the vehicle was "going to be impounded" and he initiated an inventory search. (Tr. 10.) According to Officer Erdmann, one of the reasons was "first of all you never know [when] there could be any illegal contraband." (Tr. 13.) A backpack was found in the back seat. A search of its contents yielded a firearm and marijuana. The vehicle owner appeared, and the

---

[1] Ind. Code § 35-47-10-5. The offense may now be a Class A misdemeanor, a Level 5 felony, or a Level 3 felony. We refer to the version of the statute in effect at the time of N.S.'s alleged conduct.

[2] I.C. § 35-48-4-11. The offense may now be a Class A or B misdemeanor or a Level 6 felony.

vehicle was released to him without completion of a formal inventory search or impoundment.

[4] The State alleged N.S. to be delinquent and a denial hearing was conducted on June 5 and June 9, 2014. N.S. challenged the admission into evidence of the firearm, marijuana, and any derivative testimony, on grounds that the search violated his Fourth Amendment and Indiana constitutional rights. The juvenile court initially granted N.S.'s motion to suppress, upon concluding that the backpack search was illegal. However, the juvenile court permitted D.M. to testify concerning N.S.'s possession of contraband and admitted the contraband into evidence during D.M.'s testimony, over N.S.'s continuing objection.

[5] At the conclusion of the denial hearing, N.S. was adjudicated a delinquent. Prior to the dispositional hearing, N.S. filed a motion for reconsideration of his motion to suppress. The State did not challenge the juvenile court's initial determination that the backpack search was illegal. At the dispositional hearing, the juvenile court denied N.S.'s motion for reconsideration and released N.S. to the custody of his father with terms and conditions of probation. This appeal ensued.

## Discussion and Decision

[6] A juvenile court has discretion regarding the admission of evidence, and its decisions are reviewed only for an abuse of that discretion. *C.L.M. v. State*, 874 N.E.2d 386, 389 (Ind. Ct. App. 2007). We reverse only when admission is

clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013).

[7] "Generally speaking, evidence obtained pursuant to an unlawful seizure must be excluded under the fruit of the poisonous tree doctrine." *Id.* at 266. This extension of the exclusionary rule bars evidence directly obtained via an illegal search as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or seizure. *Id.* The question to be addressed is whether "the derivative evidence 'has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting *Wong Sun v. U.S.*, 371 U.S. 471, 488 (1963)). Courts generally consider the time elapsed between the illegality and the acquisition of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.*

[8] The defendant must prove the Fourth Amendment violation and that the evidence was a fruit of that search. *Pirtle v. State*, 323 N.E.2d 634, 642 (Ind. 1975). Then, the State must show that the evidence may nevertheless be admitted because it had an independent source. *Id.* "If the road from the illegal search to the testimony, even if long, was straight, then the testimony was the product of the illegal search." *Id.* However, if the testimony is inadmissible, the facts within the testimony may be admissible if there was an independent source of the facts. *Id.* For example, the State may present testimony from witnesses whose testimony is not a product of the search. *Id.*

[9] On the record before us, it is clear that the State obtained the physical evidence – the firearm and the marijuana – as a direct consequence of the illegal search of the backpack. These items were, consistent with our Indiana Supreme Court's guidance in *Pirtle*, inadmissible. The State does not contend that the physical items were recovered from an independent source, but rather argues that D.M.'s testimony was admissible and any error in the admission of the physical exhibits was harmless.

[10] "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995) (citing Ind. Trial Rule 61). When determining whether an error is harmless, our review is de novo, and the error must be harmless beyond a reasonable doubt. *C.L.M.*, 874 N.E.2d at 391.

[11] The State called D.M. as its sole witness. D.M. testified that, on the evening of May 11, 2014, N.S. was a visitor at D.M.'s home and displayed his book bag and its contents, including marijuana. D.M. also testified that, later that evening, he and N.S. broke into vehicles and N.S. stole a pistol from one of the vandalized vehicles. He identified certain of the State's exhibits as the marijuana and pistol N.S. had secreted in his backpack. According to D.M., he had not spoken with police before the denial hearing, but had "worked out a plea agreement to misdemeanor conversion." (Tr. 61.)

[12] The State contends that D.M.'s knowledge of contraband was gained independent of the backpack search because he made personal observations that

preceded the search. N.S. claims that D.M.'s testimony was nonetheless a product of the illegal search because D.M. would never have been questioned about the items in N.S.'s backpack absent their discovery. In short, the State focuses upon D.M. having independent knowledge of the existence of the contraband and N.S. focuses upon whether the police – independent of the search – attained knowledge of the contraband. The latter is consistent with our Indiana Supreme Court precedent.

[13] In *Clark*, the defendant had been detained during investigation of a civil complaint regarding occupancy of a storage unit. A search of Clark's vehicle and bag yielded methamphetamine and manufacturing equipment. 994 N.E.2d at 258. Clark appealed his criminal convictions, arguing that his motion to suppress should have been granted, and, on transfer, the Indiana Supreme Court determined that the initial stop and warrantless search violated Clark's constitutional rights. *Id.* at 261.

[14] Examining Clark's confession and the seized evidence in light of the fruit of the poisonous tree doctrine, the Court focused upon when officers gained knowledge of the contraband and considered whether an "independent source pointed the officers in the direction of Clark's vehicle." *Id.* at 272. The Court observed, "[n]othing indicates that the officers learned this, for example, from Collins, Eller, or Dunlap." *Id.* Accordingly, the Court suggested that had one of Clark's friends or the storage facility owner provided information leading to

the contraband, he would have been considered to be an independent source.[3] In this hypothetical scenario, the provision of information such that the officers learned of the contraband would have necessarily preceded the search.

[15] We glean from *Clark* that while a companion may possess independent knowledge, he or she is an "independent source" only if the illegal search or seizure did not produce a "lead" to law enforcement. *Id.* at 266. Our Indiana Supreme Court has long ago pronounced that evidence "obtained by the exploitation of constitutionally prohibited police conduct" is forbidden. *Pirtle*, 323 N.E.2d at 642. As such, an independent source is one whose cooperation is not a product of coercive circumstances attributable to the illegal search or seizure. The *Pirtle* Court noted:

> [e]vidence of facts, forces and pressures arising from the search which naturally would tend to convince the witnesses to testify adversely to appellant is important. Evidence that the witnesses knew that the police had found the victim's wallet, that the witnesses made incriminating statements at the scene, that the witnesses confessed immediately, or that they made formal statements implicating themselves soon after their arrest at the apartment would attest to an exploitation of the original illegality. *Wong Sun*, 371 U.S. at 488.

[16] *Id.* at 641.

---

[3] The Court also noted that there was no indication that the officers were actively searching for Clark or for a rolling meth lab, such that the inevitable discovery exception might have application in Fourth Amendment analysis. *Id.* Under the Fourth Amendment, the inevitable discovery exception to the exclusionary rule can permit the introduction of evidence that eventually would have been located even in the absence of error. *Gyamfi v. State*, 15 N.E.3d 1131, 1137 (Ind. Ct. App. 2014). However, the inevitable discovery rule has not been adopted as part of Indiana constitutional law. *Id.* at 1138.

[17] N.S. argues that D.M.'s own legal jeopardy allowed exploitation of the original illegality in this case. We agree, as no facts of record point to an intervening circumstance to clear the taint of the illegal search. D.M. did not, on his own initiative, direct officers to contraband. Rather, for a favorable plea bargain, he made an in-court identification of contraband he claimed to know that N.S. had possessed. D.M., who had been discovered driving the stolen vehicle, specifically acknowledged receiving a benefit in exchange for his testimony. At the same time, he denied that he had ever spoken with police officers regarding the contents of N.S.'s backpack prior to his testimony.

[18] Both the physical exhibits and D.M.'s testimony were fruit of the illegal search. When "none of [the] evidence should have been admitted … the conviction cannot stand." *Clark*, 994 N.E.2d at 273. Likewise, N.S.'s adjudication as a delinquent, resting upon inadmissible evidence, cannot stand.

[19] Reversed.

Robb, J., and Brown, J., concur.