## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 21 2015, 6:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Terry A. White
Olsen & White, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shawn Wayne Kinningham,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 21, 2015

Court of Appeals Case No.
82A01-1411-CR-503

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Case No.
82C01-1306-FC-634

**Mathias, Judge.**

[1] Shawn Wayne Kinningham ("Kinningham") was convicted in Vanderburgh Circuit Court of three counts of Class D felony attempted theft. Kinningham appeals his convictions and sentence raising four issues. We conclude that the following issue is dispositive: whether the trial court abused its discretion when

it admitted evidence derivatively obtained as a result of the illegal search of Kinningham's hotel room.

[2] We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] From April 27, 2013 to May 1, 2013, Kinningham and his partner David Slaton approached several car dealerships in the Evansville area, negotiated purchase prices for numerous vehicles, and attempted to purchase the vehicles with checks drawn on Kinningham's account. Kinningham's checking account was closed several days before Kinningham entered into negotiations with the dealerships. Thereafter, on June 7, 2013, Kinningham was charged in Vanderburgh Circuit Court with four counts of attempted theft and four counts of check deception.

[4] Specifically, on Saturday, April 27, 2013, Kinningham, accompanied by Slaton, spoke to a salesman at D Patrick Ford in Evansville and negotiated the purchase an Audi and a BMW for $105,000. Kinningham gave the dealership a "hold check" in the amount of $2,000 drawn on Kinningham's Citibank account. An employee of the dealership explained that the purchase of the vehicles could not be completed until the dealership could verify that Kinningham had funds available.

[5] Slaton attempted to apply for a loan for the BMW, and he completed a purchase order for the BMW. However, Slaton's loan application was rejected because of his low credit score. Kinningham and Slaton were unable to obtain

an automobile from D Patrick and never returned to the dealership. Therefore, D Patrick never presented Kinningham's check to the bank for payment.

[6] After they left D Patrick, Kinningham and Slaton proceeded to Expressway Dodge dealership in Evansville. After they were told that the dealership closed at 8:30 p.m., they went to eat dinner and returned fifteen minutes before closing. Kinningham negotiated a purchase price of $37,075 for a Chrysler 300, and the salesman drafted a purchase agreement. Kinningham told the salesman that Slaton would be the vehicle owner, and Slaton signed the sales agreement.

[7] Kinningham wrote a check for the entire purchase price of the vehicle. However, the dealership would not allow them to take the car because it could not verify the availability of funds in Kinningham's account. The check was presented to the bank the following Monday, and it was returned for insufficient funds.

[8] On April 30, 2013, Kinningham and Slaton test drove a Lexus LX at Kenny Kent Lexus. Later that day, Kinningham called the dealership and offered to pay $93,000 for the vehicle. Kinningham told the salesperson that he was too intoxicated to drive, and the salesperson agreed to meet Kinningham and Slaton to complete the sale.

[9] The salesperson proceeded to the Le Merigot Hotel where Kinningham and Slaton were staying, and he was met by Slaton who gave him a $93,000 check signed by Kinningham. Slaton returned to the dealership with the salesperson who ran Slaton's credit report. The credit check listed multiple credit checks

from other car dealerships raising a "red flag." Because it was also too late in the day to verify Kinningham's account balance, the dealership refused to give the vehicle to Slaton and took him back to the hotel.

[10] On May 1, 2013, Kinningham and Slaton negotiated the purchase of a 2007 Mercedes Benz from Wright Select Motors. Slaton completed the purchase agreement and made a $500 non-refundable payment. Kinningham wrote a check for the remainder in the amount of $17,304. Because Slaton had made the $500 non-refundable payment, the dealership allowed them to take the Mercedes, which they had in their possession until their arrest the next day. The Mercedes was returned to Wright Select Motors.

[11] Detective Rick Chambers of the Jasper Police Department was investigating similar activities of Kinningham and Slaton in Dubois County when he learned that they were staying at the Le Merigot Hotel in Evansville. On May 2, 2013, the detective proceeded to the hotel and arrested Kinningham and Slaton without a warrant. The detective then searched the hotel room without a warrant and collected Kinningham's checkbook, two phones, and an iPad.

[12] A federal agent present at the hotel during the search contacted Agent Moore and told him that he suspected that Kinningham and Slaton had written bad checks to various car dealerships in the area. Later that same day, United States Secret Service Agent Michael Moore proceeded to the Le Merigot Hotel, and hotel employees gave him the remainder of Kinningham's and Slaton's

belongings.[1] These items included business cards from Evansville car dealerships and a note with the name of the sales person at Wright Select Motors where Kinningham and Slaton obtained the Mercedes.

[13] Agent Moore then began to investigate Kinningham's and Slaton's activities at the dealerships from April 27 through May 1, 2013. As a result of Moore's investigation, four counts of attempted theft and four counts of check deception were filed against Kinningham.

[14] A jury trial was held on June 25, 2014. Kinningham was found guilty of Class D felony attempted theft and Class A misdemeanor check deception for his activities at D Patrick Ford, Class D felony attempted theft and Class D felony check deception for his activities at Expressway Dodge, and Class D felony attempted theft and Class D felony check deception for his activities at Kenny Kent Lexus. Kinningham was found not guilty of attempted theft and check deception for the Mercedes he and Slaton acquired at Wright Select Motors.

[15] At the sentencing hearing, which was not held until October 30, 2014, the trial court declined to enter judgment of conviction on the check deception charges due to double jeopardy concerns. The court ordered Kinningham to serve concurrent terms of two and one-half years for the three attempted theft

---

[1] On the dates relevant to the case before us, Kinningham was on supervised release for a wire fraud conviction in the United States District Court, Eastern District of Pennsylvania. Specifically, Kinningham was convicted of fraudulently representing that he was the president of a corporation and paid for air travel and limousine services with a corporate credit card, knowing that he did not have sufficient credit to cover the cost of the services, more than $167,000. *See* Appellant's App. p. 175.

convictions. However, the trial court ordered Kinningham to serve his sentence consecutive to previously imposed sentences in Dubois County and in federal court. Kinningham was also given credit for time served in jail from May 3 to October 29, 2014. Kinningham now appeals. Additional facts will be provided as needed.

## Discussion and Decision

[16] Citing the "fruit of the poisonous tree" doctrine and its application to both the Fourth Amendment and Article 1, Section 11, Kinningham argues that the trial court abused its discretion when it admitted evidence derivatively obtained from the illegal, warrantless search of his hotel room.[2] Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Fuqua v. State*, 984 N.E.2d 709, 713-14 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we review the court's decision on appeal only for an abuse of that discretion. *Id*. The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

---

[2] The State contends that Kinningham waived this argument by failing to object to the evidence obtained as a result of the warrantless search of his hotel room. However, Kinningham objected on these grounds at trial and requested a continuing objection to the admission of evidence related to Kinningham's actions at the car dealerships. Tr. p. 119. He renewed his continuing objection throughout the trial. *See e.g.* Tr. pp. 144-45. Moreover, Indiana Rule of Evidence 103(b) states that "[o]nce the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

[17] Prior to trial, the trial court determined that Detective Chambers's warrantless search of Kinningham's hotel room was illegal.[3] Detective Chambers and a federal agent present during the search provided information to Agent Moore found during the search including the duplicate copies of the checks Kinningham gave to the car dealerships. Therefore, Kinningham argues that "[b]ut for the unconstitutional seizure of the documents, law enforcement would have had no knowledge of the alleged acts of check deception and attempted theft." Appellant's Br. at 16. The evidence gathered as a result of the search of his hotel room should have been suppressed as "fruit of the poisonous tree." *Id.*

[18] The "fruit of the poisonous tree" doctrine bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. *See Hanna v. State*, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000). "The doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure." *Id.*

[19] For example, in *Gyamfi v. State*, 15 N.E.3d 1131 (Ind. Ct. App. 2014), Gyamfi made purchases with a stolen credit card in Hancock County and attempted purchases in Boone County. While investigating Gyamfi's attempt to make purchases with the stolen credit card in Boone County, a Boone County law enforcement officer illegally searched Gymafi's vehicle and discovered the

---

[3] The State does not challenge this ruling on appeal.

receipt from the Hancock County transaction. A Boone County detective contacted the Hancock County Sheriff's Department to provide information about the Hancock County purchase Gyamfi made with the stolen credit card. Gymafi was charged in Hancock County with fraud, theft, and forgery.

[20] The Boone County charges were eventually dismissed after the trial court granted Gyamfi's motion to suppress evidence obtained during the illegal search of his person and vehicle. Gyamfi also moved to suppress the evidence in the Hancock County prosecution and argued that the State's evidence was derivatively obtained as a result of the illegal search during the Boone County investigation. The trial court suppressed only the receipt found in Gyamfi's vehicle and denied his motion to suppress all other evidence derived from the illegal search, and he was found guilty as charged.

[21] On appeal, Gyamfi argued that the evidence of the Hancock County purchase was inadmissible under the doctrine of the fruit of the poisonous tree. Our court observed that discovery of the receipt of the Hancock County transaction prompted Boone County law enforcement to contact the Speedway store in Hancock County and obtain the surveillance video of the transaction. A Boone County detective then contacted a Hancock County sheriff's deputy, a representative of the credit card company, and the Speedway gas station's corporate office. The Hancock County sheriff's deputy testified that "all evidence presented in the Hancock County case was 'all derived from those [] officers making the stop there in Boone County.'" *Id.* at 1136 (record citation omitted). The Hancock County detective stated that he obtained most of the information

on the case from Boone County law enforcement officers. Therefore, our court concluded that the Gyamfi's motion to suppress should have been granted because "the contested evidence that was nevertheless admitted amounted to evidence obtained as a direct result of information that [the Boone County officer] had learned during the illegal search."[4] *Id.* at 1136-37.

[22] *N.S. v. State*, 25 N.E.3d 198 (Ind. Ct. App. 2015), similarly involved evidence derived from an illegal vehicle search. In that case, N.S. was arrested after police officers received a stolen vehicle report. N.S. was a back seat passenger in the vehicle, and both he and the driver were arrested. After N.S. was arrested, his backpack, which was located in the backseat of the vehicle, was searched, and officers discovered a firearm and marijuana.

[23] During the delinquency proceedings, N.S. argued that admission of the firearm, marijuana, and any derivative testimony violated his Fourth Amendment rights.[5] The juvenile court granted N.S.'s motion to suppress after concluding that his backpack was illegally searched but allowed the driver, D.M., to testify that N.S. had shown him the firearm and marijuana, which contraband was also admitted into evidence.

[24] On appeal, the State argued that the D.M.'s knowledge of the contraband was gained independently from the officer's illegal search of N.S.'s backpack. We observed:

---

[4] Our court declined to address the State's arguments under the attenuation and inevitable discovery doctrines because neither doctrine has application under the Indiana Constitution. *Id.* at 1137-38.

[5] At the delinquency hearing, N.S. also argued that his Indiana Constitutional rights had been violated, but our court resolved the issue on Fourth Amendment grounds.

> [N]o facts of record point to an intervening circumstance to clear the taint of the illegal search. D.M. did not, on his own initiative, direct officers to contraband. Rather, for a favorable plea bargain, he made an in-court identification of contraband he claimed to know that N.S. had possessed. D.M., who had been discovered driving the stolen vehicle, specifically acknowledged receiving a benefit in exchange for his testimony. At the same time, he denied that he had ever spoken with police officers regarding the contents of N.S.'s backpack prior to his testimony.

> Both the physical exhibits and D.M.'s testimony were fruit of the illegal search. When "none of [the] evidence should have been admitted . . . the conviction cannot stand."

*Id.* at 202 (citation omitted). Our court noted that "while a companion may possess independent knowledge, he or she is an 'independent source' only if the illegal search or seizure did not produce a 'lead' to law enforcement." *Id.* (citing *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013)).

[25]   In this case, Agent Moore began to investigate Kinningham only after he received information that was obtained due to Detective Chambers's illegal search of Kinningham's hotel room. Detective Chambers had no knowledge of Kinningham's negotiations with the car dealerships at issue in this case prior to entering his hotel room. Tr. p. 20. The federal agent who contacted Agent Moore did so because "he saw other evidence laying around the room and thought that it linked [Kinningham and Slaton] to Evansville area crimes." Tr. p. 24. The federal agent also told Agent Moore about Kinningham's "crimes involving vehicles in Dubois County." Tr. p. 27. After receiving this information, Agent Moore "canvassed all the major dealerships in Evansville

for information regarding [Kinningham and Slaton] and possibly stolen vehicles purchased with bad checks." *Id.*

[26] Agent Moore believed that Kinningham and Slaton had been arrested pursuant to a warrant. Tr. pp. 37-38. On the date of arrest, he searched the hotel room after a friend of Kinningham and Slaton had gathered their belongings. The hotel manager told Agent Moore that anything remaining in the room had been abandoned. Agent Moore found business cards for salesmen at D Patrick Ford and Expressway Dodge.

[27] The day after Detective Chambers's warrantless search of Kinningham's hotel room, Agent Moore looked at the checkbook that Detective Chambers seized during that search. During his investigation, Agent Moore initiated contact with and collected copies of Kinningham's checks and sales documents from D Patrick Ford, Expressway Dodge, Kenny Kent Lexus, and Wright Select Motors. None of the car dealerships involved contacted law enforcement to report possible criminal activity.

[28] Without question, Agent Moore's investigation of Kinningham and his activities with car dealers in Vanderburgh County derived solely from evidence obtained during the illegal search of Kinningham's hotel room. Therefore, the evidence Agent Moore gathered from the car dealerships, the duplicate copies of Kinningham's checks and evidence of purchase price negotiations, was the fruit of the poisonous tree pursuant to Article 1, Section 11 of the Indiana Constitution. *See Gyamfi*, 15 N.E.3d at 1138.

[29] Under the Fourth Amendment, the "fruit of the poisonous tree" doctrine "has no application when the derivative evidence has an independent source, when the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint, and when the challenged evidence would inevitably have been properly obtained." *Id.* (citations and internal quotations omitted). "The question is if the derivative evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). Courts generally consider the time elapsed between the illegality and the acquisition of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.* The defendant must first prove the Fourth Amendment violation and that the evidence was a "fruit" of that search; the State must then show that the evidence may nevertheless be admitted. *Id.* at 267; *see also Hanna*, 726 N.E.2d at 389.

[30] Agent Moore did not engage in any official misconduct as he had no reason to know that Detective Chambers and other federal law enforcement officers illegally searched Kinningham's hotel room. However, nothing in the record could lead us to conclude that Agent Moore would have independently discovered evidence that Kinningham attempted to purchase vehicles from car dealerships with checks written on a closed account. Also, no intervening circumstance exists to remove the taint of the illegal search. We acknowledge the State's argument that the employees from the dealerships voluntarily

testified at trial, but Agent Moore never would have investigated Kinningham's negotiations with those dealerships absent evidence derived from the illegal search. Therefore, we reach the same conclusion under a Fourth Amendment analysis and hold that the evidence obtained by Agent Moore should not have been admitted as fruit of the poisonous tree.[6]

[31] For these reasons, the trial court abused its discretion when, over Kinningham's continuing objection, it allowed employees from the four dealerships to testify, and admitted into evidence the checks drawn on Kinningham's Citibank account and the documents detailing Kinningham's and Slaton's sales negotiations with car dealerships. We therefore reverse Kinningham's convictions for attempted theft and check deception and remand this case to the trial court for proceedings consistent with this opinion.

[32] Reversed and remanded for proceedings consistent with this opinion.

May, J., and Robb, J., concur.

---

[6] The State unpersuasively relies on *United States v. Ceccolini*, 435 U.S. 268 (1978). The facts of *Ceccolini* are distinguishable from those in this appeal. In that case, the law enforcement officer accidentally discovered information concerning an illegally gambling operation while visiting with his friend, an employee of the defendant's flower shop. The FBI had the flower shop under surveillance prior to the incident, and therefore, the FBI was aware of the shop employee's relationship with the defendant. Four months elapsed between the date of the illegal search and FBI's initial contact with the shop employee. In holding that the defendant's employee's testimony was admissible, the Supreme Court observed that there was "not the slightest evidence to suggest" that the police officer entered the shop or looked in the envelope left on the counter "with the intent of finding tangible evidence bearing on an illicit gambling operation, much less any suggestion that he entered the shop and searched with the intent of finding a willing and knowledgeable witness to testify against respondent." *Id*. at 279-80.