**v.**

**STATE of Indiana, Appellee–Petitioner.**

No. 49A02–0609–JV–732.

Court of Appeals of Indiana.

July 6, 2007.

---

Elizabeth A. Gabig, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

In this interlocutory appeal, minor J.B. contends the juvenile court erred in denying his motion to suppress evidence in a juvenile delinquency case in which J.B. was charged with having committed an act that would constitute the crime of burglary if he were an adult. J.B. frames the issue presented for review as follows: Did the juvenile court err in denying the motion to suppress fingerprint evidence where the file containing the fingerprints was unlawfully stored and illegally accessed by an unauthorized person, and the State did not prove the fingerprints were obtained in compliance with the applicable statute governing obtaining fingerprints from children?

We affirm.

The facts favorable to the ruling are that on November 3, 2005, Susan Vincior's house was burglarized in Indianapolis, Indiana. Officer David Nicholson of the Indianapolis Police Department (the IPD) arrived at the scene to investigate. There, he found a latent fingerprint, which he lifted and submitted to IPD's latent print office. Rochella O'Neil is a latent print

operator with IPD. She ran the latent print through IPD's Automatic Fingerprint Identification System (AFIS), which is a computerized database containing all the fingerprints taken from persons arrested in Marion County. According to O'Neil, after the latent print is compared with prints in the computerized database, the computer identifies 100 candidates for O'Neil to compare with the original. After she has done that, she identifies a small number of possible matches and prints a hard copy for closer inspection. After performing this analysis, O'Neil determined that the latent print lifted from Vincior's house belonged to J.B.

On March 21, 2006, the State filed a delinquency petition alleging that J.B. had committed an act that would constitute the offense of burglary if committed by an adult; J.B. was arrested a short time later. On April 13, 2006, the State filed a motion seeking permission to fingerprint J.B. in order to compare his prints with those found at the scene of the crime. At a May 23, 2006 hearing, J.B. moved to suppress any fingerprint analysis, claiming the State had not complied with the procedural requirements of Ind.Code Ann. § 31–39–5–2 and –3 (West, PREMISE through 2006 Second Regular Session). On July 7, 2006, the juvenile court granted the State's request to fingerprint J.B., and denied J.B.'s motion to suppress. Upon J.B.'s request, the juvenile court certified the order for interlocutory appeal. We accepted jurisdiction of the appeal on October 11, 2006, pursuant to Ind. Appellate Rule 14(B).

J.B. contends "[t]he trial court erred in denying a motion to suppress fingerprint evidence where the fingerprint file was unlawfully stored and unlawfully accessed by an unauthorized person and the State failed to show the fingerprints were collected in compliance with the statutory limitations on fingerprinting a child." Ap-

pellant's Brief at 4. The claim of unlawful storage is based upon the State's alleged failure to adhere to I.C. § 31–39–5–2, which will be examined more fully below. The "unlawful access" claim refers to I.C. §§ 31–39–4–2 through 31–39–4–11 (West, PREMISE through 2006 Second Regular Session), which set out those who may view confidential materials such as juveniles' fingerprint records. According to J.B., a police department fingerprint examiner is not in a category authorized under I.C. § 31–39–4 to view J.B.'s fingerprint records. Finally, J.B. claims the State failed to show that his fingerprints were collected in compliance with I.C. § 31–39–5–1(a), which provides, "(a) A law enforcement agency may take and file the fingerprints or photographs of a child if ... (1) the child is taken into custody for an act that would be a felony if committed by an adult; and (2) the child was at least fourteen (14) years of age when the act was allegedly committed." We will address these arguments in order.

J.B. contends that, in storing his fingerprints, the State failed to adhere to the requirement of I.C. § 31–39–5–2 that juveniles' fingerprint and photograph files be stored separately from those of adults. According to that statute, "Fingerprint and photograph files of children shall be separated from those of adults. The files are subject to the confidentiality provisions of I.C. § 31–39–3." I.C. § 31–39–5–2. J.B. contends this statute requires the records in question to be stored in a place physically separate from the place where adult records are stored. No case has yet addressed the question of what duties this statute imposes on the State.

Our standard for reviewing the denial of a motion to suppress is well settled. We review such rulings in a manner similar to other sufficiency matters. *Carroll v. State*, 822 N.E.2d 1083 (Ind.Ct.App.2005).

We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. *Id.* Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the judgment, but also the uncontested evidence favorable to the defendant. *Id.* In considering the challenge to the denial of the motion to suppress, we must examine I.C. § 31–39–5–2. Regarding the process of interpreting a statute, we have stated,

> The interpretation of a statute is a question of law which we review de novo. Under a de novo review standard, we owe no deference to the trial court's legal conclusions. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent. This is done by giving effect to the ordinary and plain meaning of the language used in the statute.

*Woodward v. State,* 798 N.E.2d 260, 262 (Ind.Ct.App.2003) (quoting *State v. Gibbs,* 769 N.E.2d 594, 596 (Ind.Ct.App.2002), *trans. denied), trans. denied.*

When considering the meaning of I.C. § 31–39–5–2, there is not much text to interpret, as the entire provision consists of only two sentences. The first mandates separation of children's fingerprint and photograph files from those of adults. The second subjects juveniles' files of this sort to the confidentiality provisions of I.C. § 31–39–3. We conclude that the second sentence illuminates the legislature's intent in passing this provision. Chapter 3 of I.C. § 31–39, referenced in I.C. § 31–39–5–2, deals generally with the confidentiality of juvenile delinquency records. I.C. § 31–39–3–4 (West, PREMISE through 2006 Second Regular Session) provides that all law enforcement records related to juvenile offenders are confidential and available only in accordance with I.C. § 31–39–4, which identifies the various persons who are authorized to access juvenile records. I.C. § 31–39–3–4 requires law enforcement agencies to take appropriate actions to protect the records "from unauthorized disclosure." I.C. § 31–39–3–4(b). I.C. § 31–39–3–2 (West, PREMISE through 2006 Second Regular Session) sets out the portions of delinquency records that are considered public information. The picture that emerges from this brief overview is that I.C. § 31–39–5–2 is concerned not so much with the *place* juvenile fingerprint records are stored, but instead with limiting access to those with specific statutory authorization. I.C. § 31–39–5–2 must be interpreted in light of this overarching goal.

■ In view of the purpose of the statute as set out above, "separate" as used in 31–39–5–2 refers to accessibility, not physical location. In more practical terms, juvenile records must be stored such that persons authorized to access adult records but not juvenile records will not be able to access the latter while accessing the former. Any inference of physical separation that may be drawn is merely a means to an end, with that end being confidentiality.

■ Turning now to the facts of this case, J.B.'s fingerprints were taken sometime earlier in conjunction with a previous delinquency case and were stored in the AFIS database. We agree with the State's contention that computer data-storage technology presents a different question than a situation involving, for instance, documents in a filing cabinet. If juvenile records were stored in the same unlocked cabinet as adult records, one with access to the filing cabinet could access anything located therein, including juvenile records. Data storage on a computer is different. Continuing with our filing cabinet analogy,

placing adult and juvenile records in separate, locked drawers of the same cabinet would be acceptable under I.C. § 31–39–5–2 so long as the drawer containing juvenile records could be separately locked, thus preventing access to the drawer's contents by someone with keys—or access—only to the other drawers. We presume computer databases can also be selectively "locked" in this same manner, or at least to the same end. The difficulty here, however, is that we do not have enough evidence in the record to know if this was in fact the case with the AFIS system. Thus, we agree with J.B. that the State failed to show that AFIS complied with the confidentiality requirements of I.C. § 31–39–5. This does not end our inquiry, however.

■ In this case, O'Neil ran the print lifted from the scene of the burglary of Vincior's house through AFIS. J.B. contends O'Neil is not authorized under I.C. § 31–39–4 to access confidential juvenile records because she is not an officer, which she clearly is not. Nevertheless, she is authorized to view the records in question pursuant to I.C. § 31–39–4–8(a)(1), which provides,

> The head of a law enforcement agency or that person's designee may grant any person having a legitimate interest in the work of the agency or in a particular case access to the agency's confidential records. In exercising discretion, the head of a law enforcement agency shall consider that the best interests of the safety and welfare of the community are generally served by the public's ability to obtain information about … the identity of anyone charged with the alleged commission of any act that would be murder or a felony if committed by an adult.

It may reasonably be assumed that the head of the IPD has granted O'Neil access to juvenile fingerprint and photograph records, in view of her position and duties with the IPD. Moreover, in view of that position, her area of expertise, and the particular reason she accessed J.B.'s fingerprint records in this case, O'Neil fits squarely within the parameters established by I.C. § 31–39–4–8(a)(1) as someone authorized to view the confidential records. Thus, notwithstanding that the State failed to establish that its method of storing juvenile fingerprints complied with I.C. § 31–39–5, O'Neil was authorized to view those records in any event. Does this overcome the State's failure to establish that its procedures comply with I.C. § 31–39–5–2? We conclude that it does.

In *Shultz v. State*, 742 N.E.2d 961 (Ind. Ct.App.2001), *trans. denied*, we considered the admissibility of evidence obtained when police officers wiped dirt off of a serial number tag affixed to a vehicle, in order to confirm that the vehicle was stolen. The vehicle was located on the defendant's private property. We concluded that the search (i.e., wiping off the tag) was illegal under the Fourth Amendment. We also concluded, however, that pursuant to the inevitable discovery exception, the trial court's denial of the motion to suppress that evidence was proper. We explained that the inevitable discovery exception to the exclusionary rule "permits the introduction of evidence that eventually would have been located had there been no error, for [in] that instance 'there is no nexus sufficient to provide a taint.'" *Id.* at 965 (quoting *Nix v. Williams*, 467 U.S. 431, 438, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The same result attains here. Although the method of storing juvenile fingerprints in Marion County does not comply with the confidentiality requirements of I.C. § 31–39–5–2 (or, at least, the State did not prove that it does), J.B.'s fingerprints would have been discovered even if the storage method was demonstrated to

be in compliance, because O'Neil was authorized to view the confidential records regardless. Thus, the denial of the motion to suppress was proper under the United States Constitution. *See Shultz v. State,* 742 N.E.2d 961.

 Having determined that the storage method, even if improper, does not warrant reversal because O'Neil was authorized to view the confidential files and would have discovered J.B.'s fingerprints in any event, we address J.B.'s sole remaining claim, which is that the State did not prove the fingerprints were obtained in compliance with the applicable statute governing obtaining fingerprints from children. The gist of this argument is reflected in the following excerpt from J.B.'s brief:

> J.B.'s fingerprints were taken and filed in the AFIS database at some point prior to the investigation into the November 3, 2005 break-in at 5744 Carrollton Avenue. During the suppression hearing conducted by the juvenile court on May 23, 2006, the State did not present any evidence regarding when or under what circumstances J.B.'s fingerprints were taken and filed in the database. The State failed to show the fingerprints were collected and filed within the limits of the applicable statute.

*Appellant's Brief* at 11. In conjunction with this argument, J.B. directs our attention to I.C. § 31–39–5–1, which sets out the circumstances under which a child may be fingerprinted. In essence, J.B. argues that the State was required at the suppression hearing to demonstrate that J.B.'s prints on file in the AFIS database were taken in compliance with I.C. § 31–39–5–1.

■ Our review of the record reveals that J.B. did not argue this ground at the suppression hearing. Although he did challenge the admissibility of the finger-

prints on grounds of improper storage pursuant to I.C. § 31–39–5–2, he made no claim that the prints were illegally or improperly obtained in the first place. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Corbin v. State,* 840 N.E.2d 424 (Ind.Ct.App.2006). This argument is waived. *See Sharp v. State,* 807 N.E.2d 765 (Ind.Ct.App.2004).

Ruling affirmed.

BAKER, C.J., and CRONE, J., concur.