# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 9:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chantilly R. Harrell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 16, 2017

Court of Appeals Case No.
05A05-1606-CR-1510

Appeal from the
Blackford Superior Court

The Honorable
John Nicholas Barry, Judge

Trial Court Cause No.
05D01-1512-F6-345

**Kirsch, Judge.**

[1] Chantilly R. Harrell brings this interlocutory appeal from the denial of her motion to suppress evidence. The State cross-appeals contending that the trial

court erred in certifying the denial for interlocutory appeal because it was not timely filed.

[2] We affirm.

## Facts and Procedural History

[3] On November 25, 2015, at approximately 4:00 p.m., Officers Cody Crouse and Daniel Johnson of the Hartford City Police Department responded to a neighbor's concerns of loud noise and an unresponsive female in a vehicle on Main Street in Hartford City, Indiana. There, they found Harrell in her driveway slumped over the center console in her vehicle. Harrell was not responsive when he tapped on the car window, and Officer Crouse opened the passenger's side door to check on her. Officer Johnson roused her by calling her name, but she was disoriented and unsteady on her feet. She had also soiled her pants. The officers held Harrell in a standing position until paramedics arrived.[1]

[4] Harrell refused medical treatment and requested to be allowed to go inside her home, but Emergency Medical Technicians insisted Harrell ride in an ambulance to the hospital pursuant to a policy that all patients showing "any level of intoxication . . . must be transported." *State's Ex. 1*. In addition, the

---

[1] Because Harrell said that she had just picked up her child and there was no child in the vehicle, the officers entered her home without a warrant, to assure the safety of the child. They found only Harrell's boyfriend. There is no evidence of further contact between the officers and anyone inside the home.

policy directed the technicians to "enlist the help of law enforcement whenever necessary." *Id.*

[5]  At the hospital, Harrell became increasingly upset, made demeaning statements to law enforcement officers, and continued to refuse medical treatment. She was restrained to the bed by hospital personnel after she pulled on the privacy curtains and kicked a computer. Harrell continued to refuse care and was released by a physician at the hospital. She was then arrested for disorderly conduct for her disruptive behavior and loud comments. Harrell continued to resist and struck public safety officials when she was booked into the jail.

[6]  The State charged Harrell with Count I, Level 6 felony battery against a public safety official; Count II, Level 6 felony battery against a public safety official; Count III, Class A misdemeanor resisting law enforcement; and Count IV, Class B misdemeanor disorderly conduct. Harrell filed a motion to suppress, which the trial court denied.

[7]  On March 17, 2016, Harrell filed a motion to certify the trial court's order for interlocutory appeal which the trial court denied. On May 16, 2016, Harrell filed a supplemental motion to suppress evidence. At the hearing on the motion, Harrell renewed her motion to certify the denial of the motion to suppress for interlocutory appeal, citing a recent case issued by the Court of Appeals of Indiana. On June 2, 2016, the trial court denied Harrell's supplemental motion to suppress but certified the March 10, 2016 order

denying Harrell's Motion to Suppress for interlocutory appeal. This Court accepted jurisdiction over the interlocutory appeal on July 25, 2016.

# Discussion and Decision

## *Certification for Interlocutory Appeal*

[8] The State contends that this court should not have accepted jurisdiction of the interlocutory appeal because the certification of the March 10th order was outside the thirty-day time limit permitted by Indiana Appellate Rule 14 (B)(1)(a). Because it could be dispositive, we first address the State's cross-appeal.

[9] The State argues that the trial court erroneously granted the certification because, pursuant to Indiana Appellate Rule 14(B)(1)(a), a "motion requesting certification for an interlocutory order must be filed in the trial court within thirty (30) days after the date the interlocutory order is noted in the Chronological Case Summary unless the trial court, *for good cause*, permits a belated motion." (Emphasis added).

[10] The State argues that the "good cause" exception applies only to a belated motion, not to a supplemental motion. Here, the trial court did not permit a belated motion but certified the denial of the original motion to suppress.

[11] The State cites an order in *Lewis v. State*, No. 45A03-1609-PC-2224, issued on October 25, 2016, in which this Court denied as untimely an interlocutory appeal in which the trial court originally denied the State's motion to certify

and later granted it after the State filed a motion to reconsider citing the lack of any other remedy should the case move forward. Citing to Appellate Rule 14(B)(1)(e), the Court found that the order was certified for interlocutory appeal more than thirty days after the date of the order and, therefore, the motion to certify had already been deemed denied. *Id*. This Court denied the State's motion to accept jurisdiction of the interlocutory appeal as untimely.

[12] Here, the trial court denied Harrell's original motion to suppress before our Supreme Court clarified the community caretaking function in *M.O. v. State,* 63 N.E.3d 329 (Ind. 2016) and *Cruz-Salazar v. State*, 63 N.E.3d 1055 (Ind. 2016). The trial court certified this issue for interlocutory appeal because it found "good cause" resulting from these decisions. A panel of this Court agreed and accepted this appeal. (Brown, J., and Garrard, Sr.J., concurring. Kirsch, J., dissenting. July 25, 2016.) Accordingly, we will address the merits of this case.

### *Denial of the Motion to Suppress*

[13] Our standard for reviewing the denial of a motion to suppress is well settled. *J.B. v. State*, 868 N.E.2d 1197, 1199 (Ind. Ct. App. 2007). We do not reweigh the evidence and consider conflicting evidence most favorable to the ruling. *Id.* at 1200. We must also consider uncontested evidence favorable to the defendant. *Id.* Furthermore, we defer to the trial court's findings of fact unless they are clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008). However, where the issue is the constitutionality of a search and seizure, a question of law is presented and must be reviewed de novo. *Id.*

[14] Harrell contends that her detainment constituted such a seizure and was not protected by the community caretaking function of law enforcement.

[15] Both parties agree that this issue can be decided based on our Supreme Court's decisions in *M.O.* and *Cruz-Salazar*. In *M.O.*, our Supreme Court stated that the community caretaking function "is a narrow exception to the privacy protections of the Fourth Amendment." *Killebrew v. State*, 976 N.E.2d 775, 782 (Ind. Ct. App. 2012), *trans. denied*. It considered whether the community caretaking function could justify law enforcement detention of M.O. where law enforcement had received a dispatch that a female was trapped under a BMW. Although neither the vehicle nor the female were there when officers arrived, they later observed a female in a BMW and pulled her over without observing a traffic infraction.

[16] The United States Supreme Court has identified one such exception relevant to this matter: that the officer had "an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Katz v. United States*, 389 U.S. 347, 331-32 (1967) (quoting *Michigan v. Fisher,* 558 U.S. 45, 49 (2009) (internal quotations omitted)).

[17] Indiana has codified the community caretaking function of the police with regard to individuals needing aid as follows:

> "A law enforcement officer, having reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, may . . . [a]pprehend and transport the individual to

the nearest appropriate facility."

*Ind. Code* § 12-26-4-1.

[18]     In *M.O.,* an officer responded to a report that a woman was trapped under her car. That report raised a reasonable concern that emergency medical assistance was needed and prompted further investigation. *M.O.,* 63 N.E.3d at 333. However, the investigation did not objectively support that concern. M.O. was not under her vehicle or even at the gas station when the officers arrived. While it was not unreasonable for them to look for her, the officer noted that she operated her vehicle normally and was not observed committing any traffic infractions or criminal conduct.

[19]     Our Supreme Court stated that the test was objective and that the government must establish that the circumstances as they appeared at the moment would lead a reasonable, experienced law enforcement officer to believe that someone inside the vehicle required immediate assistance. *Id.* The Court concluded that the State had failed to carry its burden of showing that an exception to the warrant requirement of the Fourth Amendment justified the stop. Accordingly, the Court reversed M.O.'s conviction. *Id.*

[20]     In *Cruz-Salazar,* police received a report of a stationary vehicle that had been running for thirty minutes, in the early hours of a cold December morning. 63 N.E.3d at 1056. Our Supreme Court found that this alone was sufficiently unusual to merit further investigation, as it could be an indicator of distress. *Id.* Police arrived at the scene to find that Cruz–Salazar was at the wheel of the

vehicle and was not responsive when an officer shined his flashlight through the windows or when he tapped on the window. *Id*. At that point, the officer had an objectively reasonable basis to open the door and check on Cruz–Salazar's well-being. *Id*. The warrantless entry into Cruz–Salazar's vehicle was permissible under the Fourth Amendment to the Federal Constitution and Article 1, Section 11 of the Indiana Constitution. *Id*. at 1056-57.

[21] Here, the evidence here showed that when the police initially found Harrell, she was in an extremely intoxicated condition. She was slumped over the center console of her vehicle, with the engine running. When the officers eventually roused Harrell and opened her door, she almost fell out of the car. She was incoherent, had soiled her pants, was uncoordinated, and had trouble maintaining her balance. Harrell talked about having just picked up her child, but there was not a child anywhere around.

[22] When the EMTs arrive to assist Harrell, she appeared to be confused, had an unsteady gait, incorrectly told the EMTs that it was July 4th when asked what the date was, smelled of alcohol, was belligerent, and yelled and screamed at the officers and the EMTs. It was the EMTs who decided to take Harrell to the hospital. The officers did not arrest Harrell, did not collect alcoholic beverage containers from her vehicle, and did not have her take a breathalyzer test. The only purpose behind transporting Harrell to the hospital was to determine if she needed further medical treatment. Harrell was in such a state of intoxication that the police could have been concerned that she had alcohol poisoning. Leaving Harrell at her own residence was not a reasonable alternative.

Furthermore, it was not unreasonable for the officers to consider that she might drive her vehicle and endanger others as well as herself.

[23] Harrell contends that the police officers' actions after their initial entry into her vehicle were not lawful under the community caretaking function. We disagree.

[24] Harrell entered the ambulance, putting her hand on an EMT for support. She insisted that she did not want to go to the hospital and became combative. At the hospital, Harrell refused treatment and was verbally abusive to medical personnel and the officers, yelling obscenities at them. She was disruptive to others in the area, including children and elderly people awaiting treatment. She continued her disruptive behavior and wrapped her legs around a curtain in the emergency room. She kicked a computer.

[25] In *M.O.*, our Supreme Court held that an objective test applied rather than a subjective one and that the government must establish that the circumstances as they appeared at the moment would lead a reasonable, experienced law enforcement officer to believe that someone inside required immediate assistance. Here, Harrell appeared dangerously intoxicated, and the officers reasonably supported the EMTs' decision to transport Harrell to a hospital.

[26] The trial court did not err in denying Harrell's motion to suppress evidence.

Affirmed and remanded.

Robb, J., and Barnes, J., concur.