

FILED

Apr 09 2018, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.K., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | April 9, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1710-JV-2274 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Geoffrey A. Gaither, Magistrate <br><br> Trial Court Cause No. <br> 49D09-1703-JD-395 |

**Crone, Judge.**

# Case Summary

[1] K.K. appeals his adjudication as a juvenile delinquent for committing acts that would constitute level 4 felony burglary and level 6 felony theft if committed by an adult. He argues that the trial court abused its discretion in admitting fingerprint evidence. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

[2] In November 2016, Jesus Morales returned to his home and found it in disarray; some of his possessions had been moved and opened shoe boxes were scattered in the hallway. He discovered that jewelry, a television, electronic game systems, and electronic games had been stolen. It appeared that someone might have entered the home through the rear bedroom window because it was unlocked and the blinds were raised.

[3] Indianapolis Police Officer Brian Wills photographed the crime scene and inspected it for fingerprints. He recovered three fingerprints from a television in the master bedroom using fingerprint tape and attached the tape to a latent print card, subsequently identified at K.K.'s denial hearing as State's Exhibit 10. Officer Wills also recovered two fingerprints from the outside sill of the window believed to be the point of entry and created another latent print card, subsequently identified as State's Exhibit 11. Officer Wills logged Exhibits 10 and 11 in the latent print database[1] with the case information (when, where,

---

[1] The record does not otherwise identify the database in which Officer Wills logged Exhibits 10 and 11.

and by whom the latent prints were recovered). The database generated a latent print number for each card, which he recorded on the back of the cards. He placed the cards in a locked box used to store latent print cards, which was kept in a secure room.

[4] Rochella O'Neil, an Indianapolis Police Department latent print examiner, was assigned to examine the latent fingerprints on Exhibits 10 and 11 for identification. She had been a latent print examiner for thirteen and a half years and had received training in basic latent print identification, complex latent print identification, and analysis of distortion in latent prints. To identify the fingerprints, she used the ACE-V method (analysis, comparison, evaluation, and verification). Pursuant to that method, she searched for comparable fingerprints in the Marion County Automatic Fingerprint Identification System (AFIS), but the search did not yield any matches. She then searched Indiana's database and found what she perceived to be a match. She requested a hard copy of the fingerprints ("the Database Fingerprints") from the State so that she could perform a manual comparison. Based on her evaluation, she concluded that fingerprints on Exhibits 10 and 11 matched the Database Fingerprints. The Database Fingerprint card provided the name, date of birth, race, sex, height, weight, and state identification number of the individual who was fingerprinted and identified the fingerprints as those of K.K. The Database Fingerprint card did not contain any other information.

[5] On March 16, 2017, the State filed, and the trial court subsequently approved, a delinquency petition alleging that sixteen-year-old K.K. committed acts that

would constitute level 4 felony burglary and level 6 felony theft if committed by an adult. On May 9, 2017, the State filed a motion to require K.K. to submit to fingerprinting, which the trial court granted.

[6] On August 15, 2017, a denial hearing was held. That morning, O'Neil fingerprinted K.K., who was now seventeen years old, and this fingerprint card was subsequently identified as State's Exhibit 12. Officer Wills testified at the hearing, and the trial court admitted Exhibits 10 and 11. O'Neil also testified at the hearing. When the State began to question O'Neil about Exhibit 12, the trial court permitted K.K.'s counsel to question her as to whether she knew anything about the circumstances surrounding the creation of the Database Fingerprints. O'Neil testified that she had "absolutely no knowledge of what happened when [K.K.] was printed or why he was printed." Tr. Vol. 2 at 27. K.K. then objected to the admission of Exhibit 12 and moved to suppress any testimony based on it. In support, K.K. argued that the Database Fingerprints were illegally obtained and retained "as far as we know" because the State had not demonstrated that they complied with the applicable statutes, and thus any evidence obtained from using the Database Fingerprints was the "fruit of the poisonous tree." *Id*. at 30-31. The trial court overruled K.K.'s objection and denied his motion to suppress and allowed O'Neil to testify over K.K.'s continuing objection. O'Neil testified that based on her experience as an expert in the field, three fingerprints on Exhibit 10 matched K.K.'s left thumb print on Exhibit 12, and one of the fingerprints on Exhibit 11 matched K.K.'s right

thumbprint on Exhibit 12. *Id*. at 39. The State did not seek to admit the Database Fingerprints.

[7] After the State rested, K.K. moved for involuntary dismissal of both counts. The trial court denied his motion and entered true findings on both counts. K.K. now appeals.

## Discussion and Decision

[8] K.K. argues that the trial court abused its discretion in admitting the State's fingerprint evidence. We review a trial court's decision on the admission of evidence for an abuse of discretion. *Burnett v. State*, 815 N.E.2d 201, 204 (Ind. Ct. App. 2004). A trial court abuses its discretion where its decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. In determining whether the trial court has abused its discretion, we do not reweigh the evidence, and we consider only evidence favorable to the ruling or unrefuted evidence favorable to the respondent. *Beasley v. State*, 46 N.E.3d 1232, 1235 (Ind. 2016). "[A] claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected." *Burnett*, 815 N.E.2d at 204.

[9] Specifically, K.K. asserts that Exhibit 12 and O'Neil's testimony based thereon were inadmissible because the State was unable to establish that the Database Fingerprints were taken in compliance with Indiana Code Sections 31-39-5-1(a), -3, -4, and -5 ("the Juvenile Fingerprinting Statutes"). Indiana Code Section 31-39-5-1(a) permits law enforcement to take and file the fingerprints or

photographs of a child if "(1) the child is taken into custody for an act that would be a felony if committed by an adult; and (2) the child was at least fourteen (14) years of age when the act was allegedly committed." Section 31-39-5-3 states that if "(1) latent fingerprints are found during the investigation of an offense; and (2) a law enforcement officer has probable cause to believe that the latent fingerprints belong to a certain child; the officer may fingerprint that child and compare the child's fingerprints with the latent fingerprints." Section 31-39-5-4(a) provides that upon written request, the law enforcement agency shall destroy or deliver to the child the child's fingerprints or photographs if "(1) the child was taken into custody and no petition was filed against the child; (2) the petition was dismissed because of mistaken identity; (3) the petition was dismissed because no delinquent act was actually committed; or (4) the petition was dismissed for lack of probable cause." Under Section 31-39-5-4(b), the law enforcement agency does not have to destroy the child's fingerprints or photographs if the child has a record of prior arrests or has another charge pending. And Section 31-39-5-5 requires law enforcement agencies to provide written notice to the child and the child's parent or guardian at the time the child's fingerprints or photographs are taken of the child's right under Section 31-9-5-4 and to "comply with any request for destruction or surrender of the records not later than sixty (60) days of the request."

[10] At the denial hearing, O'Neil testified that she had "absolutely no knowledge of what happened when [K.K.] was printed or why." Tr. Vol. 2 at 27. K.K. is correct that the State did not present evidence to establish that the Database

Fingerprints were taken in compliance with the Juvenile Fingerprinting Statutes. However, K.K. does not dispute that the fingerprints in Exhibit 12 were taken in accordance with the Juvenile Fingerprinting Statutes. Also, O'Neil's testimony was based on a comparison of the fingerprints on Exhibit 12 with those on Exhibits 10 and 11, and K.K. does not dispute the admissibility of Exhibits 10 and 11.

[11] K.K.'s sole challenge to the admissibility of Exhibit 12 and O'Neil's testimony is based on the Database Fingerprints. The Database Fingerprints were instrumental in establishing probable cause to charge him. His argument that Exhibit 12 and O'Neil's testimony are inadmissible conflates the admissibility of evidence at trial with evidence of probable cause. We reject his unsupported assumption that the use of the Database Fingerprints to establish probable cause requires, as a matter of law, that the State present evidence to prove that they were taken in compliance with the Juvenile Fingerprinting Statutes as a prerequisite for the admissibility for Exhibit 12 and testimony based on it (which in all other respects constitute admissible fingerprint evidence).

[12] There may be circumstances that would require the State to prove that fingerprints used to establish probable cause were taken and stored in compliance with the Juvenile Fingerprinting Statutes, for example, if the juvenile came forward with some evidence that raised a question regarding whether the fingerprints were obtained and stored in compliance with them. Although our courts have rarely had occasion to address these Statutes, in *J.B. v. State*, 868 N.E.2d 1197 (Ind. Ct. App. 2007), *trans. denied*, another panel of

this court addressed a juvenile's specific challenge to the State's compliance with Section 31-39-5-2.[2]

[13] The facts in *J.B.* are similar to ours, although the case is procedurally different. A house was burglarized and the police recovered latent fingerprints. O'Neil examined the latent fingerprints and found a matching set of prints on AFIS, which belonged to J.B. The State then filed a delinquency petition alleging that J.B. had committed an act that would constitute burglary if committed by an adult. The State filed a motion seeking permission to fingerprint J.B., who moved to suppress any fingerprint evidence. After a hearing, the trial court denied his motion and granted the State permission to fingerprint him. J.B. sought and obtained the trial court's certification of the order for interlocutory appeal.

[14] On appeal, J.B. argued that the State failed to adhere to the requirement of Section 31-39-5-2 that fingerprint and photograph files of children be "separated" from those of adults. The *J.B.* court concluded that "juvenile records must be stored such that persons authorized to access adult records but not juvenile records will not be able to access the latter while accessing the former." 868 N.E.2d at 1200. The *J.B.* court then concluded that there was no evidence in the record that the State maintained AFIS, which held both juvenile and adult fingerprints, so that juvenile records were accessible only to

---

[2] The other case involving the Juvenile Fingerprinting Statutes is *Turner v. State*, 508 N.E.2d 541 (Ind. 1987), but that case did not involve the use of juvenile fingerprints that were already in a database.

authorized persons, and therefore the State failed to prove that it had stored J.B.'s fingerprints in compliance with Section 31-39-5-2. *Id*. at 1201. Ultimately, the *J.B.* court determined that the State's noncompliance did not require reversal because O'Neil was authorized to access juvenile records and would have discovered the fingerprints anyway. *Id*. at 1201-02. J.B. also argued on appeal that the State failed to comply with Section 31-39-5-1, but the *J.B.* court found that argument waived because it was not presented to the trial court. *Id*. at 1202.

[15] Significantly, in *J.B.*, the State stored juvenile and adult records together on the AFIS database, raising the potential that the juvenile records were not stored in compliance with Section 31-39-5-2. It was then incumbent upon the State to prove that unauthorized persons would not be able to access the juvenile records, and the State had not produced that evidence. Here, K.K. has not come forward with any evidence that the State actually violated the Juvenile Fingerprinting Statutes in some respect and there are no circumstances that call into question the State's compliance with the Statutes.[3] Accordingly, we cannot say that the trial court abused its discretion in admitting Exhibit 12 and

---

[3] We observe that K.K. has a history of juvenile arrests and adjudications beginning when he was thirteen years old. Appellant's App. Vol. 2 at 37-38. When he was fifteen, K.K. was arrested for committing acts that would have been level 6 felony theft and level 4 felony burglary if committed by an adult. Because he was taken into custody for acts that would have been felonies and had committed those acts when he was at least fourteen years old, the State would have had the authority under Section 31-39-5-1(a) to take and file his fingerprints. Because K.K. had a history of prior arrests, the State would not have been required to destroy his fingerprints pursuant to Section 31-39-5-4(b).

O'Neil's fingerprint testimony.[4]  Therefore, we affirm the true findings for burglary and theft.

Affirmed.

Bailey, J., and Brown, J., concur.

---

[4] K.K. raises a sufficiency of the evidence argument based solely on the inadmissibility of the fingerprint evidence.  Because we have found the fingerprint evidence admissible, we need not address this argument.